[Civ. No. 10788. First Appellate District, Division One.—December 22, 1939.]

LOUIS A. BRUNVOLD, Respondent, v. VICTOR JOHNSON, Appellant.

Thomas D. Aitken for Appellant.

Halverson & Halverson for Respondents.

WARD, J.—An appeal by defendant and cross-complainant from a judgment in the sum of $9,280.50 in favor of plaintiff and cross-defendant in an action for loss of profits in connection with an alleged wrongful cancellation of a contract.

The complaint alleges that defendant Victor Johnson is the sole agent and distributor "west of the Mississippi" for the sale and distribution of cordage products of the Johnson-Pickett Rope Company, manufacturers, at Manila, Philippine Islands; that on or about the 1st day of February, 1932, plaintiff and defendant entered into an agreement in writing whereby Victor Johnson of San Francisco, for a valuable consideration, appointed plaintiff as his agent, with the exclusive right to sell the Johnson-Pickett Rope Company cordage products, and other domestic lines which "we now have and may in the future acquire" in territory comprising the southern part of the State of California and all of the states of Arizona, New Mexico, Texas and Oklahoma. Provision was made that should conditions warrant, the territory would be extended. Plaintiff was to receive commissions, due and payable on the 15th of each month, on products so sold the previous month in the above territory, provided the amount of such commissions exceeded the amount of a drawing account of $200 a month which defendant agreed to allow plaintiff for a period of two years. Plaintiff was also to receive commissions on cordage products sold to certain named purchasers located in northern California. Victor Johnson agreed to maintain a complete warehouse stock in Los Angeles and to pay all expenses incidental to the shipping and warehousing of this stock, also the taxes and insurance thereon. Plaintiff agreed to sell the products mentioned and to pay all such incidental costs as traveling expenses, hire of salesmen, clerks, office space and equipment. Victor Johnson also agreed to carry all accounts and reserved unto himself the right to pass upon all credits, both parties agreeing to cooperate in an endeavor to sell to responsible parties only, to their mutual best interests. The agreement was to run for a period of five years, subject to contingencies beyond the control of either of the contracting parties. The complaint further alleges that plaintiff entered into the performance of the agreement, and with defendant's consent and permission carried on the business in Los Angeles under the name of Victor Johnson Company of Los Angeles,

renting and equipping an office, advertising, selling and creating and building up a valuable and expanding demand for defendant's products; that in June of 1935 Victor Johnson, without sufficient cause, terminated the agreement and took over and conducted the business, notifying plaintiff's customers of such termination and continuing to carry on the business, to plaintiff's damage in the loss of profits in the sum of $25,000.

The answer admitted the appointment of plaintiff as exclusive agent, for a consideration, but denied that the contract had been terminated without sufficient cause, and in this behalf alleged: " . . . that subsequent to the execution of the same defendant and plaintiff discussed between themselves the conditions relative to the Philippine Islands and their then and probable future commercial and political relations with the United States and especially the relations affecting the commerce between said countries relating to the exporting of rope and fiber from the Philippines and the importing of the same into the United States and agreed that any substantial change made by agreement between the two said governments affecting the amount of hemp rope and/or twine allowed to be exported to the United States or in the terms thereof that such change, if restrictive as to the amount or more onerous on the importer would constitute a contingency beyond the control of either of the contracting parties contemplated by the terms of said contract and would be a sufficient and valid reason for the defendant to terminate the said contract." The answer further alleged that on June 14, 1935, the Congress of the United States enacted as a law Senate Bill No. 2530, an act described as Public No. 137—74th Congress (Tydings-McDuffie Bill); that this changed the trade relations between the United States of America and the Philippine Islands and resulted in an allocation of cordage materials of Manila hemp to the Johnson-Pickett Rope Company for export to the United States in an amount substantially one-half of prior allocations, such reduction causing the maintenance of a Los Angeles office to be unprofitable. As a separate defense it was alleged that plaintiff had agreed to handle defendant's products exclusively; that not only had the former absented himself from the territory provided as the scene of his operations, but that he had made other agreements with com-

petitive concerns and in bad faith sold the products of such concerns, to the detriment of defendant; that this constituted a breach of the agreement. By way of cross-complaint for such breach, defendant prayed damages in an amount of $10,000.

In view of the *"ad damnum"* clause of the complaint, appellant contends that the trial court committed reversible error in not sustaining his objection to the reception of evidence, particularly evidence of damages. This clause was amended, prior to trial, upon the order of court, after the filing of a demurrer, by insertion of the words: " . . . in the loss of profits", so that it read: " . . . to the damage of the plaintiff in the loss of profits in the sum of Twenty-five Thousand Dollars". No further demurrer was filed.

■ In an action for the breach of an obligation based upon a contract, the measure of damages is an amount that will compensate the injured party for the detriment proximately caused by such breach, or which in the ordinary course of things is likely to result therefrom. (Sec. 3300, Civ. Code.) Damages to be recoverable must be clearly ascertainable in both their nature and origin. (Sec. 3301, Civ. Code.) ■ Loss of profits in a business already established, definitely ascertainable or even expected, if not too remote or conjectural, is the basis for damages, and allowable without special pleading thereof. (*McConnell* v. *Corona City Water Co.*, 149 Cal. 60 [85 Pac. 929, 8 L. R. A. (N. S.) 1171]; *California Press Mfg. Co.* v. *Stafford Packing Co.*, 192 Cal. 479 [221 Pac. 345, 32 A. L. R. 114]; *Hollywood Cleaning & Pressing Co.* v. *Hollywood Laundry Service, Inc.*, 217 Cal. 131 [17 Pac. (2d) 712].) ■ Damages which may be said to be the normal and natural result of the breach complained of may be denominated general damages and pleaded accordingly, while those suffered as a consequence, though not necessarily the certain result of the breach, must be pleaded specially. (*Zvolanek* v. *Bodger Seeds, Ltd.*, 5 Cal. App. (2d) 106 [42 Pac. (2d) 92].)

In many of the cases cited by appellant the confusion in establishing the measure of damages arose from an attempt to assess damages for loss of profits in connection with contemplated business as distinguished from profits of an established business. (*Hawthorne* v. *Siegel*, 88 Cal. 160, 167 [25 Pac. 1114, 22 Am. St. Rep. 291]; *Gibson* v. *Hercules*

*Mfg. etc. Co.,* 80 Cal. App. 689 [252 Pac. 780] ; *Hacker Pipe & Supply Co.* v. *Chapman Valve Mfg. Co.,* 17 Cal. App. (2d) 265 [61 Pac. (2d) 944].) Likewise some of the authorities cited by appellant deal with loss of profits as the result of incapacity due to personal injury. These are items that must be specially pleaded (*Maus* v. *Scavenger Protective Assn.,* 2 Cal. App. (2d) 624 [39 Pac. (2d) 209]) to enable the trier of the facts to compute the total damages (*Lombardi* v. *California St. Ry. Co.,* 124 Cal. 311 [57 Pac. (2d) 66]), but these cases do not apply in an action for breach of contract where the only damage sustained is loss of profits consisting of commissions. Unless some special loss is claimed, damages for loss of profits on account of breach of contract is generally the subject of evidence rather than pleading, knowledge thereof being reasonably imputed to the offending party.

The measure of damages in this case is of small interest since the answer to the complaint sets forth an accounting which proximately alleges the amount of damages, if any. In addition, it was stipulated that if plaintiff was entitled to "anything at all", damages should be fixed in the sum of $9,280.50; and that, should it develop that plaintiff was a servant or agent of defendant, such amount would be subject to a deduction to the extent of any other earnings by plaintiff.

Prior to entering into the agreement, respondent was employed by appellant as a salesman at a fixed salary, plus commissions. Appellant contends (1) that the agreement was a continuation of this employment under different conditions as set forth in the agreement (2) that the contract was a unilateral one wherein Johnson obligated himself to pay certain commissions but Brunvold assumed no obligation toward Johnson; that if the second theory is correct the agreement was without consideration as to all unexecuted parts and could be terminated at the pleasure of either party; in brief, it is the contention of appellant that the contract was void for want of mutuality.

Brunvold was not required to perform personal service but he was required to exercise reasonable diligence in the sale of the cordage commodities and to pay all expenses incidental to such sale; Johnson contracted to maintain a complete warehouse stock in Los Angeles and to pay the expenses of ware-

housing, thus a completed bilateral contract is evidenced. (*Davis* v. *Jacoby,* 1 Cal. (2d) 370 [34 Pac. (2d) 1026] ; *Wood* v. *Duff-Gordon,* 222 N. Y. 88 [118 N. E. 214].) It is true that Johnson maintained and controlled the quantity of cordage of his company in Los Angeles; that he paid the insurance thereon and reserved unto himself the right to fix prices, but Brunvold had not only the privilege of selling, but the duty of paying the expenses of making the sales. He was acting as an agent or factor, his powers being circumscribed by the terms of the contract, including the five-year fixed term, subject only to contingencies beyond the control of either of the contracting parties.

Appellant's claim that the contract is void for want of mutuality finds some support in *Scott* v. *Cline Electric Mfg. Co.,* 104 Cal. App. 122, wherein the court held at page 125 [285 Pac. 349], that "where one party was not obligated to do anything and the other parties might" the contract was unilateral. The facts of the cases are similar but not identical. In the Scott case, an agent agreed "to push the sale" of certain motors. In the instant case, the agent promised to promote the business of the Johnson-Pickett Rope Company and in addition he obligated himself to pay all expenses incidental to selling their products, including the salaries and traveling expenses of salesmen, the hire of necessary clerks and the equipment of an office. In addition there was an implied obligation to use reasonable diligence and fidelity in the consummation of sales and the protection generally of defendant's business. (*Wood* v. *Duff-Gordon, supra.*)

The court found that all of the material allegations of the complaint were true. The second paragraph thereof alleges the pertinent features of the agreement including the allegation that it was entered into by the respective parties "for a valuable consideration". In addition, "it must be assumed, of course, that the parties hereto intended to enter into a legal and binding contract". (*Robbins* v. *Pacific Eastern Corp.,* 8 Cal. (2d) 241, 272 [65 Pac. (2d) 42, 58].) ■ The answer admitted paragraph II but alleged that the change in the commercial relations between the United States and the Philippines affecting cordage was a sufficient contingency under the contract to warrant its termination. This is the real issue in dispute—a question

of·fact, and was determined by the trial court contrary to the position of appellant. There is evidence sustaining the trial court's conclusion, and we therefore may not interfere.

The finding that sales by Brunvold for other domestic concerns were not in competition with defendant's interests was a fact borne out and confirmed by the evidence introduced, which disposes of appellant's claim that defendant was entitled to damages as alleged in the cross-complaint.

The judgment is affirmed.

Peters, P. J., and Goodell, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 20, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1940.