[Civ. No. 12375. First Dist., Div. Two. June 7, 1943.]

LOUIS A. BRUNVOLD, Respondent, v. VICTOR JOHN-
SON & COMPANY, INC. (a Corporation) et al., Ap-
pellants.

Thos. D. Aitken and Hone & Hone for Appellants.

Halverson & Halverson for Respondent.

DOOLING, J. pro tem.—For a number of years before 1937 Victor Johnson was engaged in business under the name and style of Victor Johnson and Company. The business and its assets were the community property of Victor Johnson and his wife Hilda. In 1932 Victor Johnson in the conduct

of such business entered into a contract with plaintiff giving plaintiff a five year exclusive agency in Southern California for the sale of certain commodities handled by Victor Johnson and Company. Victor Johnson breached this contract in 1935 and plaintiff commenced an action against him for damages for such breach. Plaintiff recovered judgment in that action for $9,295.50 on September 29, 1937, and that judgment was subsequently affirmed in *Brunvold* v. *Johnson*, 36 Cal.App.2d 226 [97 P.2d 489].

After the trial of that action, but before judgment, Victor Johnson caused a corporation to be formed under the corporate name of Victor Johnson and Company, Inc. The incorporators were Johnson's wife, Hilda, his attorney, Thomas D. Aitken and his secretary, M. Smith. To this corporation Johnson and his wife transferred all of the assets of the business theretofore transacted under the name of Victor Johnson and Company in exchange for all of the capital stock of the corporation except two shares, one of which was issued to Aitken and the other to Miss Smith. One half of these shares was issued to each spouse, but Johnson immediately transferred to his wife the shares which had been issued to him.

After these transfers had been effected Johnson's only remaining asset standing in his own name was a summer home in the Santa Cruz mountains of a value of not more than $3,000. The family home of the Johnsons in San Francisco stood of record in the name of Hilda A. Johnson, and on April 9, 1937, the Johnsons had recorded a declaration of homestead on this property, declaring it to be community property of the value of $5,000.

Immediately after the transfer to the corporation of the assets of Victor Johnson and Company, Victor Johnson was elected president thereof and continued to manage and conduct the business in the same manner as before. On August 27, 1937, the corporation purchased an apartment house in San Francisco with its own funds. Before the damage action of *Brunvold* v. *Johnson* was affirmed on appeal Victor Johnson conveyed to his brother-in-law the summer home in the' Santa Cruz mountains.

After the affirmance of the judgment in the damage action, execution thereon was issued to the sheriffs of Los Angeles and San Francisco counties and both executions

were returned *nulla bona*. Thereupon this action was commenced to subject the assets of Victor Johnson and Company, Inc., to the satisfaction of the judgment and for other appropriate relief. Pending this action Victor Johnson died and a claim based on the judgment was presented to his executrix by plaintiff and rejected. The inventory and appraisement in his estate showed the estate to consist of less than $200 in cash and the family home, subject to a homestead, appraised at $6,000 and listed as community property.

The trial court found that the corporation was organized with the intention and for the express purpose of taking over from Victor Johnson all of his assets not exempt from execution, that the transfer of assets from Victor Johnson to the corporation was without consideration and in contemplation of insolvency for the purpose of hindering, delaying and defrauding plaintiff in the enforcement of any judgment that he might recover in the action then pending against Victor Johnson and that by said transfer Johnson was divested of all assets save the summer home of a value of $3,000. The judgment from which this appeal is prosecuted followed, by which it was decreed that the assets of the corporation including the shares of stock therein be sold to satisfy plaintiff's judgment and, that in case of a deficiency, judgment for such deficiency should be docketed against Hilda A. Johnson personally and as executrix of her husband's will, and against M. Smith and Thomas D. Aitken.

The finding above summarized is attacked as not supported by the evidence but the evidence not only amply supports, but practically compels, the finding. It is undisputed that the assets transferred to the corporation had a net value in excess of $50,000 and it is likewise undisputed that by the transfer Johnson was stripped of all assets subject to execution except the summer home valued at $3,000. The witness Aitken, who was Johnson's attorney during all of the litigation, testified that before the transfer there would not have been a bit of trouble collecting on the judgment, but after the transfer he wrote to plaintiff's attorney advising him that Johnson was without assets and offering to buy plaintiff's judgment for $500 for its "nuisance value."

The transfer was not only void under section 3442, Civil Code, as it then read, but the court was fully justified in finding it void under section 3439, as being made with actual

intent to hinder, delay, and defraud plaintiff in the satisfaction of his judgment. (*Smedburg* v. *Bevilockway*, 14 Cal.App. 2d 312 [58 P.2d 173]; *Allee* v. *Shay*, 92 Cal.App. 749 [268 P. 962]; *Tobias* v. *Adams*, 201 Cal. 689 [258 P. 588].)

There is some attempt to show a consideration given by Mrs. Johnson for the transfer to her of the shares of stock issued to her husband, in an alleged promise to lend the corporation $10,000, if needed. Since the corporation, after the transfer, was to all intents and purposes her *alter ego*, as she owned all of its stock except two qualifying shares, this promise if made amounted to no more than one to lend $10,000 to herself. How insubstantial is this claim is further shown by the undisputed evidence that she was paid a dividend of $10,000 by the corporation on one day and the following day lent the corporation the same amount of money that she received from it the day before.

Appellants ask us to reexamine the rule announced in *Grolemund* v. *Cafferata*, 17 Cal.2d 679 [111 P.2d 641], and to hold that community property acquired since the adoption of section 161a, Civil Code, is not liable for the satisfaction of debts contracted by the husband. This court is bound by that decision, which was cited with approval by the Supreme Court in bank in *Estate of Coffee*, 19 Cal.2d 248, 252 [120 P.2d 661]. We may say in passing, however, that this case shows the wisdom of the rule announced by the Supreme Court in those cases. To hold that this property is not subject to this particular debt would be to arrive at the very unjust conclusion that community property used in the conduct of a business cannot be reached to satisfy a judgment based on the breach of a contract entered into in the conduct of that very business. The constitutional claim urged by appellants apparently did not impress the Supreme Court of the United States, which denied a writ of certiorari in *Grolemund* v. *Cafferata*, 314 U.S. 612 [62 S.Ct. 87, 86 L.Ed. 492]. The ready answer to the claim of unconstitutional deprivation of property is that in giving a vested interest in community property to the wife the Legislature could impose such condition that such property should be liable for debts contracted by the husband.

There is some claim that the present assets of the corporation, including the apartment house, cannot be reached in equity to satisfy the plaintiff's judgment, because they are not the property originally conveyed to the corpora-

tion. However, the property conveyed was all community property, subject to execution to satisfy the judgment. It remained, as to the defrauded judgment creditor, community property subject to satisfy his judgment through whatever transmutations it may be traced. Equity cannot only look through the mask of corporate form to reach the assets of the community, but it can follow those assets into whatever form of property they may, after the fraudulent conveyance, have been converted.

■ Appellants' claim that this action is barred by limitation upon examination proves to be without substance. It is based on the adoption of the Uniform Fraudulent Conveyance Act by our Legislature in 1939. By that statute section 3439.09 was added to the Civil Code, giving a creditor whose claim has matured the right to attack a fraudulent conveyance before judgment. This right so conferred could not relate back and start the statute of limitations running from the date that plaintiff's claim matured, as appellants seem to argue. Any new right conferred by section 3439.09 could only accrue on the date that that section became effective, i.e. September 19, 1939. Since this action was commenced within three years of the date of entry of the judgment sued upon and also within three years of the effective date of section 3439.09, Civil Code, it is clearly not barred under section 338, subdivision 4, Code of Civil Procedure.

■ Appellants' argument that plaintiff was not entitled to go into equity without first proceeding under sections 714 et seq. and 689, Code of Civil Procedure, is fully answered by *Bond* v. *Bulgheroni*, 215 Cal. 7 [8 P.2d 130] and the cases therein cited. Here the corporation and Hilda A. Johnson were asserting ownership of the property sought to be reached under a legal title which could only be attacked in equity. As said in *Bond* v. *Bulgheroni, supra,* at page 10: "Where a judgment creditor claims that title under a conveyance or transfer is invalid, an issue as to such ownership and title should be properly made and tried in an appropriate action in which a judgment may be had and the parties conclusively bound." We may also point to section 3439.09, already referred to in discussing the statute of limitations. That section expressly gives the creditor as to whom a conveyance is fraudulent the alternative rights, either to

"(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

"(2) Disregard the conveyance and attach or levy execution on the property conveyed." (Cf. *Estate of Kalt*, 16 Cal. 2d 807, 810 [108 P.2d 401, 133 A.L.R. 1424].)

Execution was issued and returned wholly unsatisfied. Appellants sought to impeach the return of the San Francisco sheriff by showing that no bona fide search was made for property of the debtor, and now claim that such testimony is ground for reversal. There are at least two valid answers to this contention. 1. It is the law of this state that the return of execution *nulla bona* is conclusive evidence that the creditor's legal remedies have been exhausted. (7 Cal.Jur. pp. 792-3; *Baines* v. *Babcock*, 95 Cal. 581, 591 [27 P. 674, 30 P. 776, 29 Am.St.Rep. 158].) 2. Where, as here, the judgment debtor is shown to have no property subject to execution, so that a levy would be fruitless, the return of execution *nulla bona* is not required as a condition to a suit in equity to reach equitable assets of the debtor. (12 Cal.Jur. pp. 1038-9; *Keeley* v. *Anderson*, 14 Cal.App.2d 467 [58 P.2d 410]; *Bird* v. *Murphy*, 72 Cal.App. 39, 44 [236 P. 154].)

Some claim is made of the bias and prejudice of the trial judge. An examination of the record satisfies us that the case was fairly tried, and that on the evidence the trial judge could not reasonably have arrived at any other conclusion than the one found, that the transaction attacked was fraudulent as to plaintiff.

It remains only to consider the deficiency judgment against the appellants. There is no evidence that M. Smith or Thomas D. Aitken obtained any property from the transaction except one share of stock and dividends amounting to $7.50 each. As to M. Smith it may be added parenthetically that a reading of the entire record shows no evidence that she was guilty, or even had knowledge, of any fraud. Since no property, except the trifling amount above stated, came into the hands of either of these defendants the judgment against them must be based on the theory of damages for tort. It is settled, however, that no tort liability exists against those participating in a fraudulent transfer, at least where the creditor at the time of the transfer has not reduced his claim to judgment and holds no lien upon the property conveyed. (Glenn on Fraudulent Conveyances and Preferences,

rev. ed., vol. 1, p. 123 and cases cited in note 72; Moore on Fraudulent Conveyances, vol. 2, pp. 756-7.)

 The deficiency judgment against Hilda A. Johnson as executrix is clearly proper since the judgment sued upon is the primary obligation of her decedent. The deficiency judgment against Mrs. Johnson personally is likewise proper. She received over $36,000 from the corporation in dividends and by her own testimony invested at least $20,000 of this amount in an annuity payable to herself. "Where the property alleged to have been fraudulently conveyed to the defendant is shown to have been sold by the grantee, or converted to his own use, the court will direct the defendant to account for the value thereof to the creditors and will enter a personal judgment against the grantee for the amount." (12 Cal.Jur. p. 1043; 27 C.J. pp. 668, 855-6.)

That portion of the judgment providing for the docketing of a deficiency judgment against M. Smith and Thomas D. Aitken is reversed and in all other particulars the judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied July 7, 1943, and appellant Johnson's petition for a hearing by the Supreme Court was denied August 5, 1943.