[Civ. No. 7020.   Third Dist.   July 31, 1944.]

SARACCO TANK AND WELDING COMPANY, LTD. (a
Corporation), Respondent, v. ALBERT E. PLATZ et al.,
Defendants; BRYCE SWARTFAGER, Appellant.

Bryce Swartfager, in pro. per., Joseph Maddux and Gerald B. Wallace for Appellant.

Gunther. R. Detert for Respondent.

THE COURT.—Bryce Swartfager, individually and as trustee, has appealed from a judgment which was rendered

against him and other officers and directors of Contact Mercury Mines Co., Inc., a corporation organzied under the laws of Nevada, in a creditor's suit for liability under section 412 of the Civil Code, for materials sold to the mine, no part of which was paid. None of the other defendants appealed from the judgment. The judgment was rendered against the appellant and other directors and agents of the foreign corporation on their statutory liability for wrongful "distribution of assets" of the insolvent foreign corporation to other creditors, to the exclusion of the plaintiff. The plaintiff was awarded judgment for the amount of its unpaid claim in the sum of $3,718.99, together with interest and costs. A lien on 137,640 shares of stock of the new California corporation, which were held by the appellant as security for payment of an attorney's fee of $5,000 due from the last mentioned company, was also granted in this case, with authority to sell the same to satisfy the judgment.

The estate of John E. Grover, deceased, is the owner of a 20-acre quicksilver mining claim in Pine Flat District, 18 miles northeast of Healdsburg in Sonoma County. The estate of Grover, deceased, was in the process of probating in Sonoma County. The appellant, Bryce Swartfager, was attorney for Hattie E. Ward, administratrix of the estate. October 8, 1937, the defendant, H. G. Walker, in behalf of himself and other investors, entered into a written agreement and option with said administratrix to purchase the mining claim for the sum of $40,000, to be paid in specified installments. The contract of sale was duly confirmed by the probate court July 28, 1938. January 11, 1938, the Contact Mercury Mines Company, Inc., was incorporated in the State of Nevada for mining purposes. February 11, 1938, Walker assigned and transferred the option and property to that corporation. H. G. Walker, Albert E. Platz and Bryce Swartfager were directors and officers of that corporation. Appellant admitted that he became a director of the corporation April 12, 1939. Mr. Swartfager was also the secretary and attorney for the corporation. It was duly authorized to transact business in California, and its principal place of business was in Santa Rosa, California, where the appellant resided. He had charge of the accounts of the mining corporation after he became an officer and director.

August 3, 1938, the Contact Mercury Mines Company became indebted to the plaintiff, Saracco Tank and Welding Company, for machinery and materials purchased for the mine in the sum of $3,176.52, no part of which has been paid. The appellant knew that indebtedness was due and unpaid. Plaintiff repeatedly demanded of the appellant payment of that debt. The appellant also knew that the corporation owed unpaid debts aggregating some $9,000. No dividends were ever earned or paid to stockholders. The corporation became insolvent. It was in default of payment to the Grover estate of an installment of $10,000 due upon the purchase price of the mining property.

February 25, 1939, in consideration of the expressed sum of $10, the Nevada mining company assigned and transferred to H. G. Walker all of its right, title and interest in said option and mining property. March 8, 1939, the appellant organized a new California corporation for mining purposes, called Contact Mining Company. He then became and still is a director of the new corporation. February 27, 1939, for the expressed consideration of $10, Mr. Walker assigned and transferred the option and property of the Nevada corporation to the new California mining company. The real consideration for the assignment and transfer of the option to purchase, together with all mining equipment and personal property, to the new California corporation, as appears from the written offer of Walker dated March 22, 1937, was the sum of $62,000, to be paid by issuing and delivering the following number of shares in the new California corporation to the parties named, to wit:

> 200,000 shares to H. G. Walker
> 50,000 shares to R. L. Page
> 30,000 shares to C. E. Halliburton
> 5,000 shares to H. H. Warde

The remaining portion of that purchase price is expressed in that document as follows:

"The remaining balance of said consideration, towit, Five Thousand Dollars ($5,000.00) shall be paid by the assumption and payment by said corporation of obligations outstanding against said property and said H. G. Walker in a total amount limited to the sum of Five Thousand Dollars ($5,000.00), and limited to items and persons to be designated by the said H. G. Walker."

That offer was duly accepted by the new California corporation, and the shares were accordingly issued and delivered to the individuals previously mentioned, and said sum of $5,000 was paid to Mr. Swartfager with instructions to pay the same to certain creditors named by Walker. The claim of this plaintiff was not mentioned.

This appellant testified that:

"This trustee stock and the $5,000.00 is money paid to a portion of the old creditors constituted the consideration given by the Contact Mining Company for the option agreement and mining claims obtained from Mr. Walker."

Clearly Mr. Walker was acting for and in behalf of the Nevada corporation in all the negotiations and transactions of the mining enterprise. The appellant had complete knowledge of those transactions as secretary of the Nevada corporation, and he drew many of the documents as an attorney for Mr. Walker and for the organizers of the original corporation. He testified:

"I have been the attorney for the Contact Mercury Mines Co. at all times to and including the present, since October, 1938."

He also testified:

"Contact Mercury Mines Co. received for the transfer to the Contact Mining Company of its interest in the lease and option to purchase payment of creditors claims in the sum of $5,000.00, and thereupon the Contact Mining Company issued 160,000 shares of its stock to me as trustee for the benefit of Mr. Walker, Mr. Platz, Mr. Swartfager, Mr. Halliburton and Mr. England in the amounts set forth in the Walker trust agreement."

The appellant received said consideration of $5,000 belonging to the original Nevada corporation and distributed it among certain creditors as directed. He said in that regard:

"Following incorporation of Contact Mining Company I received from Mr. Walker a list of creditors of the Contact Mercury Mines Company to be paid from the $5,000.00 to come from the new company. . . . The list for payment did not include plaintiff's account. *I knew that plaintiff's account remained unpaid.* I was told by Walker at the time that plaintiff's account was to be taken care of later in stock. *The $5,000.00 from the new company was received in various*

*amounts over a period of a year. I paid all the $5,000.00 as received to the creditors of the old company, most of whom had attachments or other claimed liens against the mine."*

The appellant wrongfully paid out the assets of the Nevada corporation without notice to the unpaid creditors, knowing that the money was insufficient with which to pay all of them. Regarding the failure to give that notice he said:

*"No notice to creditors of dissolution of Contact Mercury Mines Co., a corporation, was sent out at the time of the transfer of its assets.* No dissolution legal or otherwise of the corporation was undertaken for the Contact Mercury Mines Co. I never informed the plaintiff that the Contact Mercury Mines Co. had transferred all its assets to the Contact Mining Company or that said Contact Mining Company, after the transfer, was operating said mine. I did not give this notice."

When the appellant subsequently learned of the transfer of all the assets of the Nevada corporation to the new California company and appellant's payment of said sum of $5,000 to other creditors without giving it notice of said transactions, it brought suit in the Superior Court of the City and County of San Francisco and recovered judgment against the Contact Mercury Mines Company and H. G. Walker. That judgment remains wholly unsatisfied. This suit against the directors of the Nevada corporation for personal liability on account of said unauthorized distribution of assets was then instituted.

Upon the foregoing testimony and other competent evidence adduced at the trial the court adopted findings adverse to the defendants, to the effect that the foreign corporation was possessed of the lease and option to purchase the Sonoma County mine, together with its machinery and equipment; that the directors of the Nevada corporation, acting through H. G. Walker as agent, negotiated to transfer all of its assets to the new Contact Mining Company in consideration of $40,000 "payable to said H. G. Walker on behalf of said three directors and for the further consideration of $5,000.00 in cash from the new company to be paid to creditors of the old company"; that the original Nevada corporation was then indebted to creditors in the sum of $9,000; that no provision was made to satisfy plaintiff's unpaid claim of $3,718.99; that the appellant became a director of the Nevada corpora-

tion April 12, 1939, and as secretary and attorney of that company he was familiar with all said proceedings and knew plaintiff's claim was wholly unsatisfied; that he personally organized the new California corporation to which said assets were subsequently transferred, and he became a director and attorney for the new corporation; that pursuant to said agreement "the new company paid the old company $5,000.00 cash" and all of the assets of Contact Mercury Mines Company were transferred to the new company; that said $5,000 was paid to Bryce Swartfager, who thereafter distributed and paid said sum to certain creditors of the old corporation, without notice to plaintiff and without provision for the satisfaction of any portion of its debt; that the new company issued to Bryce Swartfager, as trustee, 137,640 shares of the stock of said new company, which are held to secure his attorney's fees in the agreed sum of $5,000, and that said transfer of assets rendered the Nevada corporation wholly insolvent.

Based upon those findings, the court rendered judgment against this appellant and the other directors of the Contact Mercury Mines Company upon their statutory liability created by section 412 of the Civil Code, for the amount of plaintiff's claim in the sum of $3,718.99, and gave plaintiff a lien on said shares of stock standing in the name of Bryce Swartfager, as trustee, to secure the payment of said claim, directing the sale of said stock to satisfy the judgment.

A motion for new trial was denied. From the judgment Bryce Swartfager only has appealed.

The appellant contends that the findings and judgment are not supported by the evidence; that the court erred in rendering a personal judgment against him for the debt of the Nevada corporation; that his title to the shares of the Contact Mining Company, which are held in trust to secure payment of his attorney's fees, is superior to that of the plaintiff; that the court erred in refusing to make Contact Mercury Mines Company a party defendant in this action, and that the court failed to adopt findings upon certain specified issues presented by the pleadings.

We are of the opinion the findings and judgment are adequately supported by the evidence. The judgment is founded on the statutory liability in favor of creditors and

against directors of a foreign corporation doing business within this state, for violation of their official duties in making unwarranted "distribution of assets," as provided by section 412 of the Civil Code. ▇ That personal liability of directors for the acts or omissions referred to in that section does not necessarily depend upon proof of fraud, in spite of the fact that their conduct may consitute constructive or even actual fraud. ▇ The complaint in this case does charge the directors with fraud, but the court did not find that they were guilty of fraud. We think such findings are not necessary in order to support the judgment. If the acts and conduct of the appellant, which are specifically found by the court to have transpired, do constitute constructive fraud, the omission of the court to have so concluded is harmless because it is apparent that more particular findings in that regard would have necessarily been adverse to the appellant. (*Kramer* v. *Sanguinetti*, 33 Cal.App.2d 303, 312 [91 P.2d 604] ; 24 Cal.Jur. 944, § 188.)

▇ The evidence satisfactorily shows that while the appellant was acting as secretary and as a director of the Nevada corporation, with full knowledge of plaintiff's unpaid claim and of other indebtedness in the aggregate sum of $9,000, he organized a new corporation and participated in the transfer of all property and assets of the foreign corporation to the new Contact Mining Company, leaving the former corporation defunct and insolvent. He then received and distributed assets of the former corporation in the form of cash in the sum of $5,000, to certain preferred creditors, without notice to this plaintiff.

Section 412 of the Civil Code provides in part:

"The directors of a foreign corporation transacting business in this State shall be liable to . . . creditors, . . . for the making of unauthorized dividends, purchases of its shares, *or distributions of assets*, . . . whether committed or done in this State or elsewhere. Such liabilities may be enforced in the courts of this State."

Section 45 of the Nevada Corporation Law likewise provides that the transfer of any property of a corporation whose insolvency is imminent, "with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be void." That section concludes by declaring that:

"Every director or officer of a corporation who shall violate or be concerned in violating any provision of this section *shall be personally liable to the creditors and stockholders of the corporation of which he shall be director or an officer to the full extent of any loss they may respectively sustain by such violation.*"

In Restatement of the Law on Conflict of Laws, page 276, section 188, it is said with respect to the liability of directors:

"So far as the directors or agents are participants in acts done within the state, a state can impose liability upon the directors or agents of a foreign corporation doing business in the state for acts done within the state or for failure to do acts required by the law of the state as a condition of doing business within the state."

■ Section 412 of the Civil Code, which creates a statutory liability against directors of a foreign corporation for violation of specified duties, is penal in its nature (*Western Mortgage and Guaranty Co.* v. *Gray*, 215 Cal. 191, 200 [8 P.2d 1016, 80 A.L.R. 866]; 19 C.J.S. 303, § 876) and should receive a strict construction in that regard. That section is intended to provide an independent remedy for creditors against directors for their unauthorized payment of dividends or distribution of assets and for other prohibited acts. It has been held the directors of corporations are trustees for the benefit of stockholders and creditors. (*Winchester* v. *Howard*, 136 Cal. 432, 442 [64 P. 692, 69 P. 77, 89 Am.St.Rep. 153]; 6A Cal.Jur. 1100, § 620.) In the Winchester case, *supra*, it is said:

"Directors are also trustees for the stockholders and indirectly for the creditors. They have always been held responsible as trustees in their management of the property and affairs of the corporation."

■ When a corporation becomes insolvent its assets are held in trust for the benefit of the stockholders and creditors. In 15A Fletcher's Cyc. of Corp., perm. ed. (1938) section 7369, at page 59, it is said:

"The theory of the trust fund doctrine is that all of the assets of a corporation, immediately on its becoming insolvent, become a trust fund for the benefit of all of its creditors."

Section 311 of the Civil Code provides that "Directors and officers shall exercise their powers in good faith."

Section 363 of the Civil Code declares that:

"Except as provided in this title, the directors of a corporation shall not authorize or ratify the purchase by it of its shares or declare or pay dividends or authorize or ratify the withdrawal or distribution of any part of its assets among its shareholders."

The preceding section specifically provides that in case of any "wilful or negligent violation of the provisions of this section" the directors "shall be jointly and severally liable to the corporation . . . for the benefit of the creditors." That section also provides that any judgment creditor of the corporation may sue either the corporation or any or all of the directors for the detriment caused by such violation of the statute. Section 412 of the Civil Code creates a statutory liability against the directors of a foreign corporation for other violations of specified acts and omissions among which are the making of "unauthorized dividends" and the unauthorized "distribution of assets."

██ · In the present case the directors violated both of the last mentioned prohibitions of the statute. While the Nevada corporation was indebted to creditors in the aggregate sum of $9,000, the directors of the foreign corporation conveyed to the new California company all of its assets, leaving the original company insolvent, and directed payment of all the money available to satisfy only a portion of its debts to the exclusion of the plaintiff's claim, without giving it notice of the transfer, and with full knowledge on the part of the directors of the existence of the debt. They also procured the issuance of shares of stock in the new company for their individual benefit. The transfer was made without notice to the plaintiff. That transaction was a clear breach of trust and rendered the directors liable for the loss thereby sustained to plaintiff. The original corporation never thereafter transacted business. The transfer amounted to a voluntary dissolution of the Nevada corporation, without providing for the payment of all of its debts. It resulted in a preference of existing creditors. Section 401a of the Civil Code provides that a distribution of assets to the stockholders on dissolution of the corporation may be made only "after determining that all the known debts and liabilities . . . have been paid or

adequately provided for." This was not done. The directors are therefore liable for plaintiff's claim.

Numerous authorities hold that directors of corporations are liable to creditors under such circumstances. (*Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 N.Y. 99 [89 N.E. 461, 134 Am.St.Rep. 827, 26 L.R.A.N.S. 267]; *McIver* v. *Young Hardware Co.*, 144 N.C. 478 [57 S.E. 169, 119 Am.St.Rep. 970]. The same principle imposing liability in favor of stockholders and creditors against directors and officers of corporations for violation of their trust is uniformly upheld by the great weight of authority. (*Lowe* v. *Copeland*, 125 Cal.App. 315 [13 P.2d 522]; *Southern Cal. Home Builders* v. *Young*, 45 Cal.App. 679 [188 P. 586]; *Nelson* v. *Jones*, 38 Idaho 664 [224 P. 435, 38 A.L.R. 85]; *Associated Fruit Co.* v. *Idaho-Oregon Fruit Growers' Assn.*, 44 Idaho 200 [256 P. 99]; *Whitfield* v. *Kern*, 120 N.J.Eq. 115 [184 A. 333].)

In the Darcy case, *supra*, under circumstances strikingly similar to those of the present case, the court said:

"The consideration for the transfer did not pass from the purchasing corporation to the Brooklyn & New York Ferry Company or its directors, but was turned over directly to the stockholders of the selling corporation and distributed among them. . . . No proceedings were ever taken to effect a dissolution of the corporation according to law. No notice of the transfer was given to creditors nor was any property retained by the directors with which to meet the plaintiff's claim. . . .

"The liability of the directors is predicated, not on the ground that their action in making the transfer was fraudulent, but upon the proposition that it is a violation of duty on the part of the directors of a corporation to divest it of all its property without affording a reasonable opportunity to its creditors to present and enforce their claims before the transfer shall become effective. . . . We think it is sound in law, and should be upheld. . . . The motives which induced the omission are immaterial. The entire assets could not lawfully be set over by the selling corporation to the purchasing corporation until some sort of opportunity had been given to the creditors of the latter to present and enforce their claims. . . . Their omission to make adequate provision for the protection of the creditors was proof of their dereliction, and good faith constitutes no defense."

In the McIver case, *supra,* under circumstances also similar to those of the present case, the court held, for the same reasons expressed in the Darcy case, *supra,* that it is "settled that the stockholders and officers of the corporation are liable to it *and to its creditors* for any acts of malfeasance, misfeasance, or nonfeasance by which their rights are injuriously affected, and, as a consequence, for any loss arising out of their fraud *or negligence."* Numerous authorities are cited in that opinion in support of that doctrine.

█ The court did not err in denying appellant's motion to join the judgment debtor, Contact Mercury Mines Company, as a party defendant in this case. The plaintiff had previously obtained judgment against that company for its claim in a suit brought in the Superior Court of the City and County of San Francisco, which remains wholly unsatisfied. That company was rendered defunct and insolvent by transfer of all of its assets to the new California corporation. It is possessed of no property or assets which would be affected by this judgment or from which the judgment could be satisfied. The stock of the new company, which is involved in this judgment, was issued to the individuals heretofore mentioned for their personal benefit. All of the directors and parties interested in this suit are parties defendant.

It has been held that where an action is brought by a creditor against a grantee of property alleged to have been fraudulently conveyed, the fraudulent grantor who has reserved no interest, legal or equitable, in the property, although he may be a proper party to the action to set it aside, is not a necessary party. (*Liuzza* v. *Bell,* 40 Cal.App.2d 417, 424 [104 P.2d 1095]; *Blanc* v. *Paymaster Mining Co.,* 95 Cal. 524 [30 P. 765, 29 Am.St.Rep. 149].) The appellant is not prejudiced because the Nevada corporation was not a party to this action.

█ The appellant contends that the evidence shows that plaintiff's debt of $3,718.99 was incurred by H. G. Walker, individually, and not by the Nevada corporation, and that the court therefore erred in holding appellant liable as a director of the company for unauthorized distribution of the funds. The court found that on August 3, 1938, the *Nevada company* became indebteded to plaintiff for goods sold and delivered, and that plaintiff had previously recovered judg-

ment in the Superior Court of the City and County of San Francisco, on September 6, 1940, in a suit against the corporation and Walker, for the sum of $3,639.59 and $79.40 costs, aggregating the exact sum for which this suit was brought. It was stipulated at this trial that said judgment was procured by the plaintiff against the Nevada corporation and Walker. The execution was returned, unsatisfied. It is not contended any part of that judgment has been satisfied. We are convinced the evidence adequately supports the court's findings that the indebtedness was incurred by the Nevada company, and that Walker was acting in behalf of that company in purchasing the machinery and equipment.

In several assignments of alleged insufficiency of evidence to support the findings the appellant asserts that the Nevada corporation issued no stock and that it was in default of payments of certain installments of the agreed purchase price of the mine; that Mr. Walker personally paid the delinquent installments and that one Kassabaum subsequently operated the mine pursuant to an agreement based on a division of royalties secured from the mine, but he thereafter defaulted and abandoned his contract, and that Walker then procured the funds, including said sum of $5,000 which was paid to appellant for creditors, with which the enterprise was financed, that said money did not belong to the Nevada company and the directors therefore did not make "unauthorized distributions" of the funds belonging to the corporation.

That is legitimate argument in view of the fact that section 412 of the Civil Code is penal in character and should therefore receive a strict construction against judgment creditors. The court, however, adopted findings against the directors on all of those issues. We are of the opinion those findings are adequately supported by the evidence. We must therefore assume those transactions were carried on by Mr. Walker as agent for the Nevada corporation, and that said sum of $5,000 belonged to that company. It was distributed to preferred creditors to the exclusion of the plaintiff.

There is also sufficient evidence to support the finding that plaintiff was entitled to a lien on the 137,640 shares of the new company held by the appellant to secure his attorney's fees. Those shares were a part of the consideration for which the transfer was made. Neither the new company nor

320

the other individual defendants deny that lien. All of them were parties to this action, and none of them, except the appellant, has appealed. The title to neither the shares of the new company which were issued to other defendants, nor those which were issued to the appellant to be held in trust to secure his attorney's fees, was paramount to the prior right of an unpaid judgment creditor to enforce payment of his valid claim against the property of the Nevada corporation, under the circumstances of this case.

For the reasons previously stated, we find no substantial merit in the other assignments of lack of evidence to support the findings and judgment.

It is true that a party to an action is entitled to findings on every essential issue of the pleadings, and that a failure to adopt findings on a material issue may entitle an appellant to a reversal of the judgment. (*Taylor* v. *Taylor*, 192 Cal. 71, 80 [218 P. 756, 51 A.L.R. 1074].) But it is the established rule, supported by a multitude of authorities, that if findings are adopted upon all essential issues necessary to a determination of the cause, or it is apparent that the adoption of more specific findings would necessarily be adverse to the appellant, the omitted findings are not prejudicial, and the judgment should be affirmed. (24 Cal. Jur. 947, § 190.)

The appellant asserts that the court erred in failing to adopt findings upon the issue as to whether he had a valid claim for attorney's fees against the Nevada corporation which entitled him to a paramount lien upon the shares of the new company held by him to secure payment of his claim. The court did find as its conclusion:

"That 137,640 shares of Contact Mining Company stock represented by certificate numbers 3, 21 and 22, held by Bryce Swartfager as trustee *are assets of the Contact Mercury Mine Co., Inc., subject to the payment of plaintiff's claim as creditor of the old company.*"

We think that is a sufficient finding that the stock of the new company which is held by the appellant is "subject to the payment of plaintiff's claim as creditor of the old company." The appellant did testify that the old company owed him $5,000 as attorney's fees and that said sum was agreed to by Mr. Walker as manager of the company. But he also

testified, "I was to be paid *out of the dividends on the stock coming from the new company.*"

We do not question the validity of appellant's claim for attorney's fees against the Nevada corporation, nor the fact that he is a creditor of that company. But it is apparent that it was a breach of his trust as a director of that company to participate in the transfer of all the assets of the Nevada corporation by means of which he might secure stock in the new company to hold as security for payment of his debt in preference to other valid claims of creditors. For the reasons previously stated, that alleged lien would be void. The court therefore properly found that appellant held the stock of the new corporation subject to the payment of plaintiff's established claim as a creditor. More specific findings on that subject would necessarily have been adverse to the appellant. The findings are therefore adequate in that respect.

The appellant has challenged several of the findings as irreconcilably conflicting. We have critically examined those findings and find no substantial merit in that charge. The transactions which are involved in this suit are exceedingly complicated. The findings do include numerous statements of facts which appear to be unessential to the determination of this action. But we are of the opinion the material findings are not irreconcilably conflicting.

Finally, the appellant declares that this suit against the directors for breach of trust in making unauthorized distribution of funds of a foreign corporation will not lie until plaintiff's remedy for collection of his claim against the corporation has first been exhausted. In support of that contention he relies on the cases of *Bond* v. *Bulgheroni,* 215 Cal. 7 [8 P. 2d 130] and *Farmers and Merchants Bank of Los Angeles* v. *Bank of Italy,* 216 Cal. 452 [14 P.2d 527]. It is asserted that supplemental proceedings against the judgment debtor as provided by section 714 of the Code of Civil Procedure was a prerequisite to the maintenance of this suit. That procedure was not necessary under the circumstances of this case. The plaintiff held a judgment against the Nevada corporation and H. G. Walker. An execution was returned in that case wholly unsatisfied. The judgment debtor possessed no assets from which the debt could be satisfied. The new corporation held the assets, including the option to purchase the mine and

the machinery and equipment, claiming title thereto. The $5,000 had been expended by the appellant in payment of other creditors. The stock of the new corporation was held by individuals who claimed title thereto. It would be futile and useless to prosecute supplemental proceedings under section 714 of the Code of Civil Procedure. Under such circumstances supplementary proceedings are wholly inadequate and a suit in the nature of a creditor's bill is therefore authorized. (*Bond* v. *Bulgheroni, supra;* 7 Cal.Jur. 800, § 10.) ▮▮▮ When the property which may be subjected to the payment of a judgment creditor has been transferred to and is held by a third party who claims title thereto a creditor's suit may be maintained without first resorting to supplemental proceedings. (Code Civ. Proc., § 720; *Brunvold* v. *V. Johnson & Co., Inc.,* 59 Cal.App.2d 75, 81 [138 P.2d 32]; *Booge* v. *First Trust and Savings Bank of Pasadena,* 46 Cal.App.2d Supp. 879 [116 P.2d 503].)

The judgment is affirmed.

A petition for a rehearing was denied August 29, 1944, and appellant's petition for a hearing by the Supreme Court was denied September 28, 1944. Curtis, J., voted for a hearing.