UNITED STATES of America, Plaintiff,

v.

Marie D. LANSING, Dean K. Lansing, and Coast Timber Company, Inc., a corporation, Defendants.

Civ. No. 41388.

United States District Court N. D. California.

May 8, 1967.

Cecil F. Poole, U. S. Atty., John M. Youngquist, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

No appearance for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ZIRPOLI, District Judge.

This action came on regularly for trial before the Court, Honorable Alfonso J. Zirpoli, United States District Judge, presiding, on April 26, 1967, at 2:00 p. m., pursuant to notice thereof given to all parties in accordance with the Federal Rules of Civil Procedure, the Rules of Civil Practice of this Court and the specific provisions relating to notice contained in the Court's order of November 30, 1966, and pre-trial order of February 21, 1967, filed in this action. Appearing at trial for the plaintiff was John M. Youngquist, Assistant United States Attorney, for Cecil F. Poole, United States Attorney for the Northern District of California. No appearance was made at trial for any of the named defendants, either by counsel or in person.

The Court, having received the oral and documentary evidence introduced by plaintiff, and having duly considered said evidence and the points of law and authorities cited in plaintiff's pre-trial statement, and having heard the oral argument of plaintiff's counsel, and, being fully advised in the premises, having announced its decision in open court, now makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure:

### FINDINGS OF FACT

1. On May 10, 1955, plaintiff's District Director of Internal Revenue at San Francisco, caused an assessment in respect of individual federal income tax liability for the year 1949 to be made against the defendant Marie D. Lansing (hereafter referred to as Marie) in the sum of $15,517.03. Notice of the assessment and demand for payment thereof was mailed to Marie by the Director on May 11, 1955, but Marie failed to make any payment of the assessed sum until March 25, 1959, when the sum of $6,409.-58 was received by the Director from Marie and credited to the assessment leaving an unpaid balance of $9,107.45 which remains unpaid to date. (Pltf. Ex. 1.)

2. On and before April 30, 1955, Marie and the defendant Dean K. Lansing (hereafter referred to as Dean), her son, were both aware of the existence of plaintiff's claim against Marie for the additional 1949 income taxes which were formally assessed against her on May 10, 1955. (Pltf. Ex. 2 and 3.)

3. From the spring of 1952 through April 30, 1955, Marie and Dean did business as equal partners (each having an agreed one-half interest) in a partnership doing business under the name "Dean Lansing." During said period the partnership conducted a logging business in Humboldt County, California, with

its principal office at 935 G Street, Arcata, California. (Pltf. Ex. 2 and 3.)

4. As of April 30, 1955, the partnership owned certain tangible assets consisting of heavy logging equipment, several vehicles, a logging camp, and an airplane; it also owned intangible assets consisting of cash, accounts and notes receivable, advances on timber cut and to be cut, and prepaid expenses. As of the same date, these tangible assets had a book value (cost less depreciation accounted for on the partnership books) of at least $28,671.52, the intangible assets had a book value of at least $104,424.25, and the total assets had a combined book value of *$133,095.77*. (Pltf. Ex. 2(2), 4 and 5.)

5. As of April 30, 1955, the partnership's liabilities comprised notes and accounts payable, accrued compensation insurance and taxes and totalled *$41,153.75*. (Pltf. Ex. 4 and 5.)

6. Substantially all of the partnership assets held as of April 30, 1955, other than those assets representing or acquired by partnership earnings, were acquired with contributions of Marie's own money and property. By his own admission, Dean's contributions to the partnership consisted principally of services and not of money or property. (Pltf. Ex. 2 and 3.)

7. On April 28, 1955, Marie and Dean agreed to dissolve the partnership and in connection therewith to sell all of the tangible partnership assets to the defendant Coast Timber Company, Inc. (hereafter referred to as Coast), a corporation then newly-formed and solely-owned by Dean. This agreement was made and executed in writing by Marie, Dean and Coast. By the terms of the agreement, as consideration for the sale Coast agreed to assume all liabilities of the partnership and to pay the difference between the book value of the assets and the liabilities it assumed. Payment of $5,000 in cash was to be made to Marie "in full and complete satisfaction of all of her right, title, interest and equity in the assets." The balance of the consideration was to be paid to Dean in installments. (Pltf. Ex. 2(4) and 3.)

8. Since the total partnership book net worth as of April 30, 1955, amounted to $91,942,02, Marie's one-half interest in the partnership book net worth as of that date amounted to *$45,971.01*.

9. On April 30, 1955, the partnership was dissolved and the partnership assets and liabilities were distributed. Marie received the agreed $5,000, and she has never received anything more than that sum in respect of her total one-half interest in the partnership. (Pltf. Ex. 2 and 3.)

10. Notwithstanding the terms of the agreement described in Finding 7 above, the actual distribution of the partnership assets and liabilities resulted in Dean, *individually*, receiving partnership assets having a net worth (book values of specific assets transferred to less specific liabilities assumed by Dean) of *$50,886.72* and Dean's corporation, Coast, receiving partnership assets having a net worth (book values of specific assets transferred to less specific liabilities assumed by Coast) of *$41,055.30*. (Pltf. Ex. 4 and 5.)

11. The fair market values of the tangible partnership assets which were transferred to Dean and to Coast on April 30, 1955 totalled at least *$127,522.40*, based upon evidence showing the sales prices received or trade-in values allowed on subsequent dispositions of certain specifically identified assets by Dean and Coast to unrelated third-party purchasers in transactions occurring within the 18 months immediately following April 30, 1955. The specific assets on which this valuation is evidenced were depreciating items of logging machinery, vehicles, buildings, and an airplane which would not have appreciated in fair market value during the time between the partnership transfer (April 30, 1955) and the subsequent sales and trade-ins. (Pltf. Ex. 5, 6, 7, 8 and 9.)

12. The fair market values of the intangible partnership assets which were transferred to Dean and Coast on April

30, 1955, totalled *$92,141.83*, discounting the book amount of accounts receivable by the sum of $12,282.42 subsequently determined to be uncollectible. (Pltf. Ex. 5.)

13. The combined total fair market value of the transferred partnership assets as of April 30, 1955, was therefore at least *$219,664.23*. The partnership real net worth, based on this minimum fair market value of assets, less the liabilities of $41,153.75, was thus *$178,-510.48*, and Marie's, one-half interest fairly valued, was therefore at least *$89;-255.24* at the time of dissolution and transfer.

14. In exchange for the payment of $5,000 to Marie, Dean and Coast thus acquired assets fairly valued at $89,255.-24, of which approximately $40,000 was acquired by Coast and approximately $50,000 was acquired by Dean, individually. (Finding 10 above.)

15. Aside from the fair value of her partnership interest, as of April 30, 1955, Marie's tangible assets comprised only her home in Arcata, California, having a fair market value of $9,000 by her own sworn statement, and her furniture, having a fair market value of $900 by her own sworn statement. She had no other intangible assets. During the year 1955, Marie received a net salary of $2,752.90 from employment with Coast, plus the $5,000 received from the partnership sale, and she expended $7,500 of those receipts for living expenses. By her own sworn statement there was no other property which she had held and sold during 1955, either before or after April 30, 1955, aside from her partnership interest. As of April 30, 1955, Marie had an unmatured debt to plaintiff in the amount of $15,517.03 in respect of her 1949 income tax liability, which matured and became due and payable after the formal assessment on May 10, 1955 (Finding 1 above). As of December 31, 1955, in addition to the foregoing debt, Marie had debts outstanding for state and local taxes totalling $946.08, and she had further debts outstanding for federal income taxes for 1952 and 1955 total-

ling an additional $5,538.45. (Pltf. Ex. 2(6).)

16. On January 23, 1956, Marie submitted to plaintiff's District Director of Internal Revenue a written offer to compromise the income tax liabilities which had been assessed against her for the years 1949, 1952 and 1955. By the terms of that written offer, Marie expressly agreed to the suspension of the running of the statute of limitations on collection of those liabilities for the period during which the offer was pending consideration by the Internal Revenue Service and for one year thereafter. Marie formally withdrew the offer by letter received by the Director on December 4, 1957. (Pltf. Ex. 2(5) and (7).)

17. The present action by plaintiff, seeking judgment against Marie, Dean and Coast in respect of the unpaid balance of Marie's income tax liabilities for 1949 (Finding 1 above), was commenced in this Court by the filing of the complaint on March 21, 1963, upon the authorization and direction of delegates of the Secretary of the Treasury and the Attorney General of the United States. An amended complaint was filed on September 15, 1964, and on October 12, 1964, Marie, Dean and Coast filed a joint answer to the amended complaint, admitting and denying certain allegations of the plaintiff and alleging by way of defense that the action was barred by the statute of limitations.

18. On November 28, 1966, the attorneys of record representing Marie, Dean and Coast before the Court moved for leave to withdraw as counsel for Dean and Coast only and showed by affidavit that, after diligent effort over an extended period of time, they could not locate the whereabouts of Dean, that the books and records of Dean and of Coast were under the control of Dean and could not be located, and that they could not prepare and defend Dean and Coast in this action without Dean's presence, records and assistance in preparation and trial. By order of November 30, 1966, the Court allowed the attorneys to withdraw their representation of Dean and Coast, over

the opposition of plaintiff but expressly without prejudice to plaintiff and without prejudice to the Court's jurisdiction over the persons of Dean and Coast acquired by their general appearance and answer. The order provided that, until such time as a new attorney entered his appearance for Dean and Coast in this action, service of all further papers and notices would be deemed made upon them upon the filing of such items with the Clerk. No new appearance of counsel for Dean and Coast was made between November 30, 1966, and the date of trial. All papers and notices filed during that period were served upon Dean and Coast in accordance with the order of November 30, 1966.

19. On December 9, 1966, Marie agreed to the entry of judgment against her, individually, as prayed for in the amended complaint in this action, by signed stipulation with the plaintiff filed on that date. On December 15, 1966, a partial judgment was entered in this action by the Clerk against Marie individually, in accordance with the stipulation and the Court's order thereon, in the sums of: $9,107.45, representing the unpaid balance of her assessed 1949 income tax liabilities; $8,163.27, representing interest accrued thereon in accordance with law through October 31, 1966; plus the sum of interest to accrue on the unpaid assessment from October 31, 1966, to the date of payment in full at the statutory rate of 6% per annum; and plus $6.00 in statutory lien filing fees and $278.04 in plaintiff's costs in this action to the date of partial judgment.

20. Any of the following conclusions of law which might be deemed findings of fact are hereby found as facts.

## CONCLUSIONS OF LAW

1. Any of the foregoing findings of fact which might be deemed conclusions of law are hereby made conclusions of law.

2. The Court has jurisdiction of the subject matter and of the parties in this action. 28 U.S.C. §§ 1340 and 1345;

26 U.S.C. § 7402(a). Creighton v. Kerr, 20 Wall. 8, 22 L.Ed. 309 (1873).

3. This action was timely brought against all defendants within the statutory period of limitations provided for commencement of court proceedings to collect federal tax liabilities, as extended by Marie's written agreement tolling the period while her offer in compromise was pending consideration before the Internal Revenue Service and for one year thereafter (Finding 16). 26 U.S.C. § 6502(a). United States v. Decker, 241 F.Supp. 283 (D.C.Ariz.1965).

4. The $5,000 which Marie received in exchange for her one-half interest in the partnership upon its dissolution on April 30, 1955, was not a fair equivalent for the value of her interest, which was worth at least $89,255.24 (Findings 13 and 14), and the transfer of her interest in the net partnership assets was thus made without fair consideration having been received by her in exchange therefor. Cal.Civ.Code, § 3439.03(a).

5. By reason of the transfer without fair consideration, Marie, after April 30, 1955, was left with assets having a total fair salable value which was less than the amounts required to pay her tax indebtedness to the plaintiff when it became due and payable on May 10, 1955, and her other indebtedness which matured later in 1955 (Finding 15), and the transfer of her partnership interest therefore rendered her insolvent. Cal. Civ.Code, § 3439.02(a).

6. The transfer of Marie's partnership interest, having been made without her receipt of fair consideration and thereby rendering her insolvent, was therefore fraudulent as to plaintiff as a matter of law, without regard to the actual intentions of Marie, Dean or Coast in making such transfer. Cal.Civ.Code, § 3439.04.

7. Dean and Coast, being fraudulent transferees of Marie's partnership interest and having each individually received assets in the transfer having fair market values far in excess of what they paid Marie (Finding 14) and far in ex-

cess of Marie's indebtedness to plaintiff at and after the time of transfer (Finding 15) and having each subsequently sold or otherwise disposed of those assets and converted the proceeds therefrom to their own use (Finding 11) and not having accounted for such proceeds in this action, are therefore jointly and severally liable to the plaintiff for the full amount of its claim against them in this action in respect of the unpaid tax liability of Marie, and plaintiff is accordingly entitled to personal judgment against them. Pedro v. Soares, 18 Cal. App.2d 600, 605, 64 P.2d 776 (1937); Brunvold v. Victor Johnson & Co., 59 Cal.App.2d 75, 83, 138 P.2d 32 (1943).

8. Plaintiff's judgment against Dean and Coast shall include the amount of the unpaid tax assessment for which judgment has heretofore been entered against Marie in this action, plus interest thereon as provided by law, plus plaintiff's costs in this action in accordance with 28 U.S.C. § 1920, and including plaintiff's costs of taking the three depositions of witnesses received in evidence at trial pursuant to Rule 26(d) (3) in lieu of the witnesses' personal appearances.

Let judgment be entered accordingly.