[Civ. No. 32255.  Second Dist., Div. Five.  Jan. 31, 1969.]

AHMANSON BANK AND TRUST COMPANY, Plaintiff, v. HARRY W. TEPPER, Defendant and Appellant; MILTON GOTTLIEB, Defendant and Respondent.

334

Young & Young and Walter H. Young for Defendant and Appellant.

Sydney J. Dunitz for Defendant and Respondent.

AISO, J.—Harry W. Tepper, an interpleaded defendant, appeals from a summary judgment in this interpleader action adjudging Milton Gottlieb, another interpleaded defendant, to be entitled to funds deposited into court by the interpleader Ahmanson Bank and Trust Company, a corporation, (hereafter "Ahmanson").

### Procedural Background

Ahmanson instituted this interpleader action December 5, 1963. It tendered into court a sum of $17,531.62, representing the surplus remaining from proceeds of a trustee's sale, after payment of the note secured by a trust deed on real property described as the "West half of Lot 26, Block 16, Westgate" in Los Angeles County (hereafter "the real property"). The defendant and appellant herein, Harry W. Tepper (hereafter "Tepper"), and the defendant and respondent herein, Milton Gottlieb (hereafter "Gottlieb"), along with other parties not involved in this appeal, were impleaded and required "to interplead together concerning their respective claims" to the fund.

On June 21, 1966, Gottlieb filed his notice of motion for a summary judgment, annexing his supporting declaration (certificate) executed on June 15, 1966. On July 5, 1966, Tepper filed his opposing declaration (certificate) executed on July 1, 1966. Gottlieb apparently did not press this motion to a hearing. Instead, he filed a new notice of motion for a summary judgment on August 5, 1966, annexing thereto his supporting declaration executed on August 3, 1966. To this later declaration, Gottlieb appended as exhibits the judgment in superior court case No. 752,157 and various recorded documents constituting the chain of title to the funds interpleaded

and to Tepper's claimed ownership of the real property as of the time of the trustee's sale. The notice further stated that the motion would be based upon the supporting declaration and the file in the action.[1]

Tepper actually filed no declaration in opposition to Gottlieb's new declaration annexed to his notice of motion filed on August 5, 1966. Only an unsigned copy of his earlier declaration, filed July 5, 1966, was attached to his counsel's memorandum of points and authorities in opposition to Gottlieb's motion.

Gottlieb's motion for summary judgment was granted by a minute order entered October 4, 1966. Tepper's subsequent motions to "vacate minute order and judgment and re-hear motion for summary judgment" and for a new trial were all denied on January 3, 1967, except for the portion granting a rehearing.[2] The trial court then signed and filed the summary judgment, entered January 5, 1967, which adjudged that Gottlieb was entitled to $16,910.92 of the funds deposited in court ($17,531.62, less $120.70 costs and $500 attorneys' fees allowed to the interpleader Ahmanson) and that all other defendants take nothing.

Tepper appeals from the judgment entered January 5, 1967, and from the order of October 4, 1966, which granted Gottlieb's motion for a summary judgment. The attempted appeal from the order of October 4, 1966, must be dismissed as the order itself is not appealable. (See, e.g., *Saunders* v. *New Capital for Small Businesses, Inc.* (1964) 231 Cal.App.2d 324, 326-327 [41 Cal.Rptr. 703] ; *Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770, 771 [145 P.2d 364] ; and cf. *Artucovich* v. *Arizmendiz* (1967) 256 Cal.App.2d 130, 131-132 [63 Cal.Rptr. 810].)

### Issue on Appeal

The respective claims to the fund, which Gottlieb and Tepper assert, are both equitable in character, rather than legal. Gottlieb bottoms his claim on a "default" judgment obtained

---

[1] The notice did not ask for the striking of any of Tepper's pleadings (see Code Civ. Proc., § 437c), but no issue has been made of this defect by Tepper, either in the trial court or upon this appeal.

[2] The minute order also provided: "Judgment for defendant Milton Gottlieb is signed and filed. Defendant Milton Gottlieb is given 30 days leave to file a corporate surety bond in the sum of $16,910.92. Upon the filing of said bond, the clerk is directed to pay to defendant Milton Gottlieb the sum of $16,910.92 out of the funds on deposit with the clerk in this action. If no bond is posted a stay of execution on the judgment is granted until the end of the said 30 day period."

against Tepper's predecessors in title in Gottlieb v. Aero Properties, Inc. (Los Angeles Superior Court, No. 752,157), which awarded him the sum of $30,880 on an unpaid promissory note as against A. L. Littman, also known as Alfred L. Littman (hereafter "Littman"), and which adjudicated against Littman and his wife Charlotte A. Littman (hereafter "Charlotte") that the conveyance of the real property from Littman to his wife Charlotte on April 7, 1960, was fraudulent and that the conveyance be "set aside and made a nullity."

Since the appeal is from a summary judgment, we inquire whether Tepper's declaration in opposition to Gottlieb's declarations on file and matters subject to judicial notice raise any triable issue of fact requiring resolution before Gottlieb's claim to the fund may be declared to be superior as a matter of law to that of Tepper. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

### The Facts

The following facts are established as uncontroverted by the respective declarations and matters subject to judicial notice referred to in the declarations of either or both Gottlieb and Tepper.

a. *Chronology of events.* Despite some repetition that might result, we set forth a chronology of the events to assist easier comprehension of the maze of transactions involved in this case.

| | |
|---|---|
| 1. December 5, 1958. | Harry S. Zane executed and acknowledged grant deed of the real property to Littman. |
| 2. January 29, 1959. | Littman acknowledged trust deed on the real property, dated January 21, 1959, to Zane to secure $30,000 note dated January 21, 1959. |
| 3. February 19, 1959. | Zane assigned note and trust deed (*supra*) to William Lawless. |
| 4. February 25, 1959. | Documents (items 1, 2 and 3, *supra*) were recorded. |
| 5. August 31, 1959. | Littman guaranteed note from Aero-Properties, Inc. to Gottlieb, which is note sued upon in Gottlieb v. Aero Properties, Inc., et al., case No. 752,157 (*infra*). |

6. April 7, 1960.  Littman executed, acknowledged, and recorded grant deed conveying the real property to his wife Charlotte.

7. August 17, 1960.  Gottlieb filed Gottlieb v. Aero Properties, Inc., et al., L. A. Superior Court No. 752,157, to recover on corporate note against Gottlieb and have his conveyance to Charlotte (item 6, *supra*) set aside as fraudulent conveyance. Lis pendens also recorded.

8. September 29, 1960.  Charlotte granted to Norman-Allen Corporation (a Nevada corporation, hereafter "Norman-Allen") and grant deed recorded.
Littman quitclaimed to Norman-Allen; quitclaim deed recorded.

9. February 28, 1962.  Quitclaim deed from Norman-Allen to Norman-Allen Corporation, as trustee for Globe Service Co., dated February 12, 1962, recorded.

10. April 26, 1962.  William Lawless (see item 3, *supra*) assigned note and trust deed to Tepper.

11. October 15, 1962.  Three quitclaim deeds to Tepper "in lieu of foreclosure" executed by Norman-Allen, Norman-Allen, trustee for Globe Service Co., and Littman and Charlotte.

12. January 23, 1963.  Tepper executed Declaration of Default on note (item 10, *supra*).

13. January 28, 1963.  Assignment from Lawless to Tepper (item 10, *supra*) recorded.

14. November 20, 1963.  Ahmanson conducted trustee's sale, obtaining $45,500, leaving surplus of $17,531.62 interpleaded.

15. November 27, 1963.  Quitclaim deeds "in lieu of foreclosure" to Tepper from Norman-Allen, Norman-Allen trustee for Globe Service Co., and Littman and Charlotte (item 11, *supra*) recorded.

| | |
|---|---|
| 16. December 5, 1963. | Ahmanson filed this action interpleading, among others, Gottlieb and Tepper, and tendering deposit of $17,531.62 (item 14, *supra*) into court. |
| 17. March 16, 1964. | Gottlieb's judgment in case No. 752,157 entered. |
| 18. October 4, 1966. | Gottlieb's motion for summary judgment in this case granted. |
| 19. January 5, 1967. | Summary judgment declaring Gottlieb entitled to $16,910.92 (see items 14 and 16, *supra*) entered. |
| 20. February 24, 1967. | Tepper filed notice of appeal. |

b. *Source of the interpleaded funds.* Littman purchased the real property from a Henry S. Zane, a single man, on December 5, 1958. The grant deed was dated December 5, 1958, and recorded on February 25, 1959. As part of this transaction, Littman gave back a note for $30,000 payable to Zane's order and a trust deed on the real property securing the note. This trust deed, dated January 21, 1959, and acknowledged January 29, 1959, was recorded on February 25, 1959. Zane assigned the note and trust deed to one Lawless,[3] by an assignment which was recorded along with the trust deed on February 25, 1959.

Lawless subsequently assigned the note and trust deed to Tepper on April 26, 1962. This assignment was not recorded until January 28, 1963, on which date Tepper[4] notified Ahmanson that it was the successor trustee under the trust deed and that the April 3, 1962, and all subsequent payments due and payable on principal and interest on the note were in default, in the amount of $24,685.63 plus interest from March 3, 1962.

Ahmanson then conducted a trustee's sale on November 20, 1963, selling the real property for $45,500 to an Alfred El Semoussi and his wife. After deducting the costs of sale and paying Tepper what was due to him as the holder of the note secured by the trust deed, there remained the excess of $17,531.62, which Ahmanson later paid into court.

[3] Ahmanson's verified complaint states that the assignment was dated February 19, 1959, which Tepper admits, in his answer, as being true.

[4] Observe, as shall be later delineated, that Tepper also claims to have been the equitable owner of the land on this date by virtue of three quitclaim deeds to him executed "in lieu of foreclosure," dated October 15, 1962, but not recorded until November 27, 1963, which is after the trustee's sale conducted at his request.

*c. Basis of Gottlieb's claim.* Littman in receiving the conveyance of the real property from Zane took title in his sole name, i.e., "Alfred J. Littman, a married man." By a grant deed dated and recorded April 7, 1960, Littman purported to convey the real property to Charlotte as her sole and separate property. The deed recited that the consideration was less than $100 and had no I.R.S. stamps affixed to it.

Some time prior to this conveyance to Charlotte, Littman had guaranteed payment of a note for $24,670 payable to Gottlieb. The maker of the note was the "Aero Properties, Inc.," and Littman was an officer thereof. In fact, the note was executed on behalf of the corporation by Littman and a J. P. Maloney. This note was secured by a trust deed on property other than the real property involved in this action.

On August 17, 1960, Gottlieb filed the action entitled, Gottlieb v. Aero Properties, Inc., et al., (Los Angeles Superior Court, No. 752,157) to recover on the note and to set aside the deed of April 7, 1960, from Littman to Charlotte, as a fraudulent conveyance. Littman and Charlotte were among those named as defendants. On the same date that the complaint was filed, Gottlieb recorded a lis pendens giving notice that the action was to set aside the aforesaid deed as a fraudulent conveyance.[5]

The complaint, inter alia, averred that the trust deed securing the note in that case was then worthless; that at the time Littman conveyed the real property to Charlotte on or about April 7, 1960, Littman "was insolvent; and that said property was so conveyed without fair consideration and while [Gottlieb] was a creditor of [Littman] ''; that "LITTMAN has no property other than the real property conveyed, as aforesaid, out of which plaintiff can satisfy his claim''; and "that said property was so conveyed with actual intent to hinder, delay or defraud creditors present at the time of said conveyance and the future creditors of defendant A. L. LITTMAN

---

[5]The body of the lis pendens reads: "NOTICE IS HEREBY GIVEN that an action entitled as above has been commenced by the above named plaintiff against the above named defendants; that said action is now pending in the above entitled Court; that said action affects the title to certain real property in the County of Los Angeles, State of California, described as the West ½ Lot 26, Block 16, Westgate Tract, as per Map recorded in Book 7, Page 22 of maps records of the County Recorder of said County and State; and that the object of said action is to set aside a fraudulent conveyance of said real property from defendant A. L. Littman to defendant Charlotte A. Littman, and that such conveyance be set aside and annulled and for such other and further relief as to the Court seems just and proper."

without fair consideration; and was received by defendant CHARLOTTE A. LITTMAN with knowledge of said intent on the part of defendant A. L. LITTMAN.''

The copy of the grant deed appended to Gottlieb's declaration dated August 3, 1966, discloses that the deed itself bore a legend that the consideration for the conveyance was less than $100.

After an initial appearance, Aero Properties, Inc., Littman, and Charlotte eventually failed to appear for trial and Gottlieb obtained a ''default judgment,''[6] entered March 16, 1964, against Aero Properties, Inc., and Alfred L. Littman, and each of them, for $30,880 ($28,880 principal, interest, and $2,000 attorney's fees), and adjudging that the conveyance of April 7, 1960, from Littman to Charlotte ''was a fraudulent conveyance and is hereby set aside and made a nullity.'' No part of the judgment for money has been paid.

d. *Tepper's chain of title.* The following conveyances were made by Littman and Charlotte, subsequent to August 17, 1960, when the lis pendens was filed.

Charlotte by a grant deed dated and recorded September 29, 1960, conveyed her interest in the real property to the Norman-Allen Corporation, a Nevada corporation. No I.R.S. stamps were affixed to this deed. It recites that Charlotte was a married woman.

On the same date, September 29, 1960, Littman executed a quitclaim deed on the real property to the Norman-Allen Corporation, which was recorded the same date. No I.R.S. stamps were affixed to this quitclaim deed.

The Norman-Allen Corporation by a quitclaim deed dated February 12, 1962, and recorded February 28, 1962, quitclaimed its interest in the real property to Norman-Allen Corporation as trustee for Globe Service Co. No. I.R.S. stamps were attached. The deed is executed on behalf of the Norman-Allen Corporation, a Nevada corporation, by C. A. Littman as President and R. N. Littman as Secretary. The handwriting ''C. A. Littman'' resembles that of ''Charlotte A. Littman'' on the grant deed of September 29, 1960, referred to above.

The Norman-Allen Corporation as trustee for Globe Service Co., by quitclaim deed labelled ''DEED IN LIEU OF FORECLOSURE,'' dated October 15, 1962, but not recorded until

---

[6]For distinction between default and uncontested cases, see: Code Civ. Proc., §§ 585 and 594; *Barbaria* v. *Independent Elevator Co.* (1955) 133 Cal.App.2d 657, 659 [285 P.2d 91]; *Warden* v. *Lamb* (1929) 98 Cal. App. 738, 741 [277 P. 867]. Here a proper notice of trial was served.

November 27, 1963, quitclaimed its interest to Tepper. No I.R.S. stamps were attached. However, under the description of the land, it is stated: ''Grantor declares that this conveyance is freely and fairly made, grantor having sold said land to grantee for a consideration equal to the fair value of grantor's interest in said land; and grantor further declares that there are no agreements, oral or written, other than this deed between grantor and grantee with respect to said land.'' The deed was executed on behalf of the corporation by C. A. Littman, President, and R. N. Littman, Secretary.

The Norman-Allen Corporation also quitclaimed its interest in the real property by a quitclaim deed similar in all respects to the quitclaim deed of Norman-Allen Corporation as trustee for Globe Service Co., except for the name of the grantor.

Likewise, on October 15, 1962, by a quitclaim deed labelled ''DEED IN LIEU OF FORECLOSURE,'' and recorded November 27, 1963, Littman and Charlotte, as his wife, quitclaimed their interest in the real property to Tepper. It bore no I.R.S. stamps, but had the same statement as the quitclaim deeds of Norman-Allen Corporation, as trustee, and Norman-Allen Corporation that the grantor made the conveyance freely and voluntarily for a consideration equal to the grantor's interest in the land and that no agreements, either oral or written, existed between grantor and grantee, other than the deed itself.

### The Analysis

We note *in limine* that even though Tepper acquired his assignment of the note and the deed of trust initially executed by Littman to his grantor Zane, on April 26, 1962, after recordation of the lis pendens in case No. 752,157 (recorded on August 17, 1960), Tepper has received full payment on the note from the proceeds of the trustee's sale held November 20, 1963, at his specific request. Tepper, therefore, has no further claim as beneficiary under the trust deed.

With the exception of the grant deed from Littman to Charlotte declared by the judgment in case No. 752,157 to be fraudulent and null and void as to Gottlieb, all other conveyances in Tepper's chain of title were recorded subsequent to the recordation of the lis pendens in case No. 752,157 on August 17, 1960. Consequently, even if Tepper were a bona fide purchaser without notice, these later deeds were all void as against Gottlieb's judgment. ''Every conveyance of real property . . . is void . . . as against any judgment affecting

the title, unless such conveyance shall have been duly recorded prior to the record of notice of action.'' (Civ. Code, § 1214.) The lis pendens itself gave notice that the deed by which Charlotte acquired her title was under attack as being a fraudulent conveyance. Gottlieb's judgment in case No. 752,157 was a judgment affecting title to the real property.

Furthermore, ''recordation of a notice of lis pendens' is in effect a republication of the pleadings'' and ''is to give constructive notice of all the facts apparent upon the face of the pleadings, and of those other facts which the facts so stated necessarily put a purchaser on inquiry.'' (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405].) A lis pendens ''gives notice of what may be established by the judgment, and is effective with respect to what is established'' (*Rose* v. *Knapp* (1957) 153 Cal.App.2d 379, 386 [314 P.2d 812]).

Gottlieb's declarations in support of his motion for summary judgment not only attached a copy of the judgment in case No. 752,157, but the declaration itself refers to that action. Matters in the file of that action were, therefore, the subject of judicial notice (*Martin* v. *General Finance Co.* (1966) 239 Cal.App.2d 438, 442 [48 Cal.Rptr. 773]; *Goldstein* v. *Hoffman* (1963) 213 Cal.App.2d 803, 814 [29 Cal.Rptr. 334]; *Thomson* v. *Honer* (1960) 179 Cal.App.2d 197, 203 [3 Cal.Rptr. 791]; Evid. Code, § 452, subd. (d)), in the trial court and they likewise are judicially noticeable in this court (*Martin* v. *General Finance Co., supra*). The numerous conjectural issues of fact which Tepper seeks to raise before this court are all answered by the allegations of the complaint in case No. 752,157, in effect, republished by the lis pendens, and upon which the uncontested judgment was based.

The action No. 752,157 was one that would fall under section 3439.09 of the Civil Code,[7] as well as sections 3439.04, 3439.06, and 3439.07. The judgment in that case reads in part: ''IT IS ORDERED AND ADJUDGED: . . . 2. That the conveyance by defendant Alfred L. Littman, a married man,

---

[7] Civil Code, section 3439.09: '' (a) Where a conveyance . . . is fraudulent, as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser or encumbrancer for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser or encumbrancer: (1) Have the conveyance set aside or . . . annulled to the extent necessary to satisfy his claim, or (2) Disregard the conveyance and attach or levy execution upon the property conveyed. (b) A purchaser or encumbrancer who without actual fraudulent intent has given less than a fair consideration for the conveyance . . . may retain the property . . . as security for repayment.''

to defendant Charlotte A. Littman, a married woman, as her sole and separate property, of that certain real property in the City of Los Angeles, County of Los Angeles, State of California, described as: The West half of Lot No. 26 in Block No. 16 of Westgate, as per map recorded in Book 7 Page 22 of Maps, in the office of the County Recorder of said County, by Grant Deed dated April 7, 1960, recorded April 7, 1960, in Book D807, Page 514, of Official Records, Los Angeles County, California, was a fraudulent conveyance and is hereby set aside and made a nullity.'' Since no written findings were made nor were required (Code Civ. Proc., § 632, subd. 1, prior to January 1, 1969), ''every intendment is in favor of the judgment, and it is presumed that every fact essential to the support of the judgment was proved and found by the court'' (*Bekins Van Lines, Inc.* v. *Johnson* (1942) 21 Cal.2d 135, 137 [130 P.2d 421]). (Accord: *Korry of Cal.* v. *Lefkowitz* (1955) 131 Cal.App.2d 389, 391 [280 P.2d 910]; *Hughes* v. *City of Torrance* (1946) 77 Cal.App.2d 272, 281 [175 P.2d 290].)

Tepper filed no declaration in opposition to Gottlieb's declaration of August 3, 1966, (filed August 5, 1966); nor does his declaration filed July 5, 1966, refute any of the foregoing facts or Gottlieb's declaration that his judgment against Littman for $30,880 plus interest remains unsatisfied. Tepper's declaration filed July 5, 1966, merely sets forth a list of documents by which he claims equitable ownership to the interpleaded fund. It is in striking contrast to Gottlieb's declaration filed August 5, 1966, in its failure to fully and fairly describe the various deeds. Likewise, Tepper fails to state therein the precise consideration he paid, if any, for any of the three quitclaim deeds taken in lieu of foreclosure although presumably such amounts were within his knowledge and would be material to litigation involving a fraudulent conveyance issue in his chain of title.

The cause of action on the note and guaranty was adjudicable in the same action as the one for setting aside the fraudulent conveyance. (*Michal* v. *Adair* (1944) 66 Cal.App.2d 382, 389 [152 P.2d 490]; *Heffernan* v. *Bennett & Armour* (1944) 63 Cal.App.2d 178, 183-184 [146 P.2d 482]; Civ. Code, § 3439.09.) While Gottlieb in his action No. 752,157 could have disregarded the conveyance claimed to have been fraudulent and attached the real property itself (Civ. Code, § 3439.09, subd. (a)(2)), he was not under any duty to do so.

(*Mattern* v. *Carberry* (1960) 186 Cal.App.2d 570, 572 [9 Cal.Rptr. 137].)

*Patterson* v. *Missler* (1965) 238 Cal.App.2d 759, 770 [48 Cal.Rptr. 215], states the rule that where a grantee is not an active participant in the fraud: "A judgment in favor of a creditor, in a fraudulent conveyance action . . . sets aside the conveyance insofar as it affects the creditor, but does not set it aside as to the grantor; as between the creditor and the grantee the conveyance is ineffective; but as between the grantor and the grantee the conveyance remains in full effect. (*McGee* v. *Allen*, 7 Cal.2d 468, 476 [60 P.2d 1026.]) The right of the creditor is to have the interest of his debtor in the property at the time of conveyance subjected to his claim. (*Ackerman* v. *Merle*, 137 Cal.169, 171 [69 P. 983].)" But here there is no reason not to hold the conveyance void as to Charlotte as well for she likewise had notice of and was a knowing party to the fraud. (Civ. Code, § 3439.07.) Neither did she give fair consideration for the conveyance. (Civ. Code, § 3439.03.) Tepper waived whatever right he had to retain the property under section 3439.09, subdivision (b), of the Civil Code by his causing the trustee's sale of November 20, 1963.

It adds nothing to Tepper's claim to urge that Gottlieb's lis pendens did not operate to impress a lien upon the real property or the fund now deposited in court. Section 3439.11 of the Civil Code expressly states in part: "In any case not provided for in this act the rules of law and equity . . . shall govern." By virtue of the judgment declaring the conveyance from Littman to Charlotte on April 7, 1960, to be fraudulent and a nullity, Gottlieb obtained the right to subject Littman's interest in the real property as of the date of this fraudulent conveyance to the satisfaction of his judgment. (*Patterson* v. *Missler* (1965) *supra*, 238 Cal.App.2d 759, 770.) The trustee's sale may have put the real property itself beyond reach, but in equity the asset can be followed into whatever form it has been converted after the fraudulent conveyance (*Brunvold* v. *V. Johnson & Co., Inc.* (1943) 59 Cal.App.2d 75 [138 P.2d 32]),[8] either upon the theory of following the *res* into the hands of a constructive trustee (cf. *Bass* v. *Youngblood* (1963) 221 Cal.App.2d 278, 289 [34 Cal.Rptr. 326]; *Ohio Elec. Car. Co.* v. *Duffet* (1920) 48 Cal.App. 674, 678 [192 P. 298]) or by applying a kind of equitable conversion (*Los*

---

[8]Subject, of course, to superior rights, such as that accruing from the note and trust deed given by Littman to Zane, or any other transaction that would cut off equitable rights.

*Angeles Trust & Sav. Bank* v. *Bortenstein* (1920) 47 Cal.App. 421, 423-424 [190 P. 850]). Gottlieb thus had an equitable lien upon the surplus funds deposited in court. (*Ladd* v. *Mathis* (1932) 125 Cal.App. 535, 543 [13 P.2d 1012]; *Murphy* v. *Murphy* (1922) 57 Cal.App. 182, 184 [207 P. 43].)

Since the court had jurisdiction over both Gottlieb and Tepper and the fund in *custodia legis* at the times the order for summary judgment was granted and the summary judgment entered, no levy of execution by Gottlieb upon the fund by permission of the court being first obtained was necessary.

The belated recordation of the three quitclaim deeds in lieu of foreclosure from Norman-Allen, Norman-Allen trustee, and Littman and Charlotte on November 27, 1963, after the trustee's sale (instituted by Tepper and conducted by the trustee on November 20, 1963) added nothing to Tepper's claim to the interpleaded funds.

Since the undisputed facts thus establish Gottlieb's equitable right to the interpleaded surplus fund and since Tepper's declaration raised no material triable issue of fact which would cloud Gottlieb's right to the fund as a matter of law, the summary judgment was properly granted in this case. (Code Civ. Proc., § 437c; *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 149 [60 Cal.Rptr. 377, 429 P.2d 889]; *Kassan* v. *Bledsoe* (1967) 252 Cal.App.2d 810, 813, 816-817 [60 Cal.Rptr. 799].)

### Disposition

The judgment is affirmed with directions to the trial court to strike that portion of Tepper's answer to the complaint in interpleader which is adverse to Gottlieb; the attempted appeal from the nonappealable order of October 4, 1966, is dismissed.

Stephens, Acting P. J., and Reppy, J., concurred.