Filed 6/28/13  W/F Investment Corp. v. Neal CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| W/F INVESTMENT CORP.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>CHARLES F. NEAL et al.,<br><br>    Defendants, Cross-complainants and Respondents;<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEM INC., et al.,<br><br>    Defendants and Respondents. | G046882<br><br>(Super. Ct. No. 30-2010-00355681)<br><br>O P I N I O N |

        Appeal from a judgment and postjudgment order of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Aires Law Firm, Timothy Carl Aires for Plaintiff, Cross-complainant and Appellant.

Songstad Randall Coffee & Humphrey, L. Allan Songstad Jr., and Garret R. Rogers for Defendants, Cross-complainants and Respondents Charles F. Neal, Sharon K. Peile, Bank of America N.A., and Defendant and Respondent Mortgage Electronic Registration System Inc.

No appearance by Defendant and Respondent First American Title Company.

\* \* \*

Plaintiff W/F Investment Corp. seeks a declaration that its judgment debtor has an interest in a residential property, which plaintiff intends to use to satisfy the debt. The judgment debtor held legal title to the residence until 25 years ago when he transferred his interest to his mother. In 1991 a court determined that transfer was fraudulent as to a creditor unrelated to this suit and "set aside" the transfer. In this appeal we must interpret the 1991 judgment to determine whether the court "set aside" the transfer for all purposes such that legal title reverted to the judgment debtor, or whether it was set aside only to the extent necessary to satisfy the prior creditor's claim. The trial court held it was only set aside in the more limited sense, which results in plaintiff in this case having no claim on the residence. We affirm.

## FACTS

In 1987 Russell Diehl and his wife, Diane G. Diehl, transferred their interest in a residence to Diehl's mother the day after suffering a judgment for $37,500 in

2

favor of William F. Quirk, Jr.[1] Diehl's mother subsequently reconveyed the property to Diehl and his wife. In 1988 Diehl was served with an order to appear for a judgment-debtor exam, and within days Diehl and his wife again conveyed the residence to Diehl's mother. Quirk subsequently filed a complaint "To Set Aside a Fraudulent Conveyance" against Diehl's mother. The complaint prayed for a judgment "[t]hat said fraudulent conveyance be set aside to the extent necessary to satisfy plaintiff's claim." The trial court found that Diehl had transferred the residence with the intent to defraud Quirk, his creditor (Diehl's mother, on the other hand, did not have fraudulent intent). Accordingly, the court entered judgment, stating the transfer "having been found to have been made with the actual intent to defraud plaintiff, is hereby declared to be set aside" (we refer to this as the "set-aside judgment"). The judgment was recorded in 1991.

In 1993 Diehl suffered an unrelated judgment in favor of Westerly Corporation. That judgment was renewed in 2003 in the amount of $848,820.36. An abstract of judgment was recorded in 2004. The judgment was assigned to plaintiff, which is the basis of plaintiff's claim here.

Between 1989 and 2007 there were a series of transfers of the residence among Diehl's family members, none of which involved Diehl himself. The last of these transfers resulted in Diehl's wife holding legal title as her sole and separate property.

In 2009 Diehl's wife sold the residence to defendant Charles F. Neal. Neal's purchase was financed in part by a loan from defendant Bank of America, N.A.

In 2010 plaintiff filed suit against, as relevant here, Neal, Neal's wife, Bank of America, and Mortgage Electronic Registration Systems Inc. (a beneficiary of the deed of trust in favor of Bank of America). The complaint seeks a declaration that Diehl has an interest in the residence upon which plaintiff could execute.

---

[1] Quirk is not a party to this suit.

Prior to trial, the court bifurcated the proceeding. The first issue to be tried was whether the 1991 set-aside judgment completely nullified the 1987 and 1988 transfers such that title was restored to Diehl. Plaintiff contended it did and that none of the subsequent transfers purported to transfer Diehl's interests. The result, plaintiff claimed, was that Diehl still maintained an interest in the residence, which was available to satisfy plaintiff's judgment.

After hearing phase one of the trial, the court disagreed: "The Court rules that an avoidance judgment in the unrelated case 579724 Quirk vs. Diehl did not restore title to Russell Diehl, defendant in the present action.[2] The avoidance action only set aside the 1987 and 1988 conveyances for the limited purpose of permitting the plaintiff creditor Quirk to enforce his judgment. Defendant Russell Diehl transferred all of his interest in the real property more than 5 years prior to Plaintiff W/F Investment Corp. obtaining its judgment or recording its abstract." (Footnote added.)

The second issue to be tried was whether, despite not holding record title to the residence, Diehl maintained an equitable interest in the residence. Plaintiff claimed Diehl maintained an equitable interest as evidenced by a 2007 deed transferring the residence among Diehl's family members. That deed was from "Diane G. Diehl and Russell Reed Diehl III, *wife and husband* and Reed Kyle Diehl, a single man, all as joint tenants" (italics added) to Diane G. Diehl as her sole and separate property. It was undisputed that the reference to "wife and husband" in this deed was erroneous — Diane G. Diehl's is Diehl's wife, but Russell Reed Diehl III is Diehl's son. Nonetheless, plaintiff claimed this reference to "wife and husband" was the "shark's fin" that revealed to the world Diehl's hidden equitable interest. There was no testimony from any of the Diehls.

---

[2] At this point Diehl was a defendant in the action. Plaintiff later voluntarily dismissed Diehl.

4

The court held there was insufficient evidence to show Diehl held an equitable interest: "Civil Code section 679 gave absolute ownership of the property to [Diehl's wife]. She held the property at the time of transfer in 2009 as her 'sole and separate property.' Further, pursuant to Evidence Code section 662, the owner of legal title to property is presumed to be the owner of the full beneficial interest. There was no beneficial or equitable interest held in the name of Russell Diehl which existed in 2007. Further the evidence to support such a notion would have to be 'clear and convincing evidence,' and there is no competent evidence this court could rely upon to reach such a conclusion. There is no merit to the argument that [Diehl's wife] was holding a beneficial interest for [Diehl] for the past 20 years."

The court entered judgment in favor of defendants. Plaintiff filed a motion to set aside the judgment and enter a new judgment (Code Civ. Proc., § 663) and a motion for new trial, raising the same legal issues raised in this appeal. The court denied both. Plaintiff timely appealed from the judgment and postjudgment order.

DISCUSSION

The first issue we address is whether the set-aside judgment reverted title to the residence to Diehl. This requires us to interpret the set-aside judgment. As the evidence concerning the interpretation of the judgment is undisputed, and as the interpretation of a written instrument is generally a question of law, our review is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Parsons v. Bristol Develop. Co.* (1965) 62 Cal.2d 861, 865-866.)

"The rules for interpreting judgments are well settled . . . . [Citation.] . . . [T]he 'same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing.' [Citation.] The general rule is that 'The language of a . . . [writing] is to govern its interpretation, if the language is clear and

5

explicit, and does not involve an absurdity.' [Citation.] There are exceptions. 'The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the . . . [writing] must be construed accordingly.' [Citation.] Where an ambiguity exists, 'The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect. . . .'" (*Estate of Careaga* (1964) 61 Cal.2d 471, 475.) The statement of decision may be considered in construing the judgment. (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 201 ["The suggestion made by defendant that the 'judgment alone should be considered and the findings disregarded if outside the scope of the judgment' can have no force in view of the settled rule that the findings constitute the decision of the court"].)

Plaintiff contends the term "set aside" means to void or annul, citing various dictionaries. Plaintiff further contends the set-aside judgment is clear on its face and that resort to materials outside the four corners of the judgment is improper. Plaintiff then concludes the set-aside judgment plainly voided the 1987 and 1988 transfers, with the result that legal title to the property reverted back to Diehl. And since no subsequent deed purported to transfer Diehl's interest, plaintiff concludes Diehl's interest is still available for execution.

Plaintiff's plain reading of the judgment has some surface appeal. In a vacuum, we might agree the term "set aside" means to void or nullify something. In context, however, we conclude the term "set aside" is ambiguous, and we ultimately conclude the court did not nullify the 1987 and 1988 transfers.

The ambiguity stems from the historical and legal context of the judgment. This was a judgment in a fraudulent conveyance action. Historically in such cases, courts were authorized to avoid a transfer only to the extent necessary to satisfy a creditor's claim. In *Heffernan v. Bennett & Armour* (1952) 110 Cal.App.2d 564, for example, the

trial court held that title to certain fraudulently transferred assets remained with the transferor and never passed to the transferee, but the Court of Appeal reversed. It reasoned, "The first error in this line of reasoning is the assumption that title did not pass to [the transferee]. Title did pass, subject to attack only by members of the protected class, each of whom must pursue the property in a timely and appropriate manner, successfully to subject it to his claim. A transfer in fraud of creditors is valid as to the grantor and all persons claiming under him, 'and as to all persons except creditors of the grantor who may question it in a proper proceeding.'" (*Id.* at 585.) As another court stated the rule, "'No rule of law is more firmly established than that a transfer of property made in fraud of creditors, while void as to them, is binding upon the parties and those in privity with them. The statutes against fraudulent conveyances are designed merely to protect the interests of creditors, and their provisions do not in any manner affect the rights of the parties to the conveyance, and these must therefore be determined by the principles of the common law.'" (*Ramirez v. Hartford Acc. & Indem. Co.* (1938) 29 Cal.App.2d 193, 196-197.)

As plaintiff points out, these cases were decided prior to the enactment of the Uniform Fraudulent Transfer Act (UFTA) (Civ. Code, § 3439 et seq.), upon which the set-aside judgment is based. Consistent with the cases cited above, the UFTA provides as a remedy, "Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." (Civil Code § 3439.07, subd. (a)(1).) Plaintiff contends, however, that under the UFTA courts are empowered to go beyond that remedy based on section 3439.07, subdivision (a)(3)(C). That subdivision permits the court to order, "[s]ubject to applicable principles of equity and in accordance with applicable rules of civil procedure" "[a]ny other relief the circumstances may require."

The parties debate whether this catch-all remedy permits a court to go beyond the express statutory remedy of avoiding a transfer "to the extent necessary to satisfy the creditor's claim." We need not decide that issue, however. We will assume,

7

without deciding, that under appropriate circumstances a court could nullify a deed for all purposes. The question to be answered here is: Did the court do so in the set-aside judgment?

The answer to that question is not immediately clear. The term "set aside" is not found in the remedies authorized under the UFTA, and the history of fraudulent transfer remedies described above suggests the possibility that the court intended the ordinary remedy but simply used loose language. Given this ambiguity, contrary to plaintiff's claim, the trial court properly looked to the statement of decision and the underlying complaint to interpret the set-aside judgment.

The statement of decision underlying the set-aside judgment is notable for what it does not discuss: it does not discuss any intent to issue an extraordinary remedy. It cites no authority for issuing such a remedy, nor is any rationale for such a remedy discussed. Rather, the statement of decision reveals the underlying case to be a vanilla fraudulent transfer case: Diehl suffered a judgment, and the next day, unbeknownst to his mother, he recorded a deed transferring the residence to her. The court specifically found the mother did not participate in the fraud. (Cf. *Ahmanson Bank & Trust Co. v. Tepper* (1969) 269 Cal.App.2d 333, 344 [where transferee participated in the fraud, transfer was voided].) In short, there is no indication the court intended to grant extraordinary relief, nor that the circumstances warranted extraordinary relief.

Further, the complaint sought the traditional, limited relief from a fraudulent transfer: that the fraudulent conveyance be set aside "to the extent necessary to satisfy plaintiff's claim." The fact that plaintiff prayed for limited relief tends to corroborate our inferences from the statement of decision that the court intended the ordinary remedy of avoiding the transfer for limited purposes. We also note the complaint is titled "Complaint (To Set Aside a Fraudulent Conveyance)", which may explain where the court picked up the "set aside" language.

8

The historical and statutory context, combined with the statement of decision and complaint, lead us to conclude the trial court properly interpreted the set-aside judgment as avoiding the 1987 and 1988 transfers for the limited purpose of satisfying the claim of the creditor in that action. Consequently, the set-aside judgment did not revert legal title to Diehl.

*The Court Correctly Ruled Diehl Did Not Have an Equitable Interest*

Plaintiff contends next that, even if Diehl holds no legal title, he maintained an equitable interest in the residence. Plaintiff's argument rests wholly on the 2007 deed transferring the residence from "Diane G. Diehl and Russell Reed Diehl III, wife and husband, Reed Kyle Diehl, a single man, all as joint tenants" to "Diane G. Diehl a married woman as her sole and separate property." It was undisputed at trial that Russell Reed Diehl III is not Diane Diehl's husband, but instead her son, and that the reference to "wife and husband" was erroneous. Undeterred, plaintiff claims, "The execution of the 2007 Grand Deed [*sic*] by the hand of Diane G. Diehl conclusively establishes that Russell R. Diehl, had at that moment an equitable interest in [the residence]; no other evidence on this issue was needed or even admissible."

Plaintiff's argument is obscure, but we divine two distinct arguments from plaintiff's various comments.

First, plaintiff seems to contend the 2007 deed evidences a resulting trust in which Diehl's wife held title for Diehl. "'A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties." (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847.) "[O]ne who claims a resulting trust in property has the burden of proving the facts establishing his [or her] beneficial interest by clear and convincing evidence." (*Gomez v. Cecena* (1940) 15 Cal.2d 363, 366-367; see Evid.

9

Code, § 662 ["The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof"].)

Here, the evidence fully supports the trial court finding no evidence of a resulting trust. There was no evidence that *in 1987 and 1988*, when Diehl transferred his interest to his mother, he or any other party to the transaction intended Diehl to maintain an equitable interest. None of the Diehls testified, and there was no other evidence concerning the parties' intent. It was undisputed that the reference in the 2007 deed to "wife and husband" was erroneous. Plaintiff claims *the error* somehow evidences the parties' intent — 20 years in the past — to create a resulting trust. We are at a loss to follow plaintiff's logic.

The other argument plaintiff makes is that, under Evidence Code section 622, the erroneous recitation in the 2007 deed that Diane Diehl and Russell Diehl III are "wife and husband" creates a conclusive presumption that Diehl maintained an equitable interest. Evidence Code section 622 states, "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest . . . ."

The logic of plaintiff's argument is flawed, however. If we were to straightforwardly apply section 622 here, we would conclude (absurdly) that mother and son are actually husband and wife. But that would not establish that *Diehl* has an interest in the residence. Thus, section 622 is no help to plaintiff. Accordingly, Diehl does not hold an equitable interest.[3]

---

[3] Another argument plaintiff advances, the logic of which evades us, is that because a fraudulent conveyance action affects title to real property, the set-aside judgment nullified the 1987 and 1988 transfers. Plaintiff spends four pages of its brief citing out-of-state cases holding that a fraudulent conveyance action affects title to real property, and thus it is appropriate to file a lis pendens. We agree that a lis pendens is appropriate in connection with a fraudulent conveyance action; California law is already

10

*The Court Committed No Reversible Evidentiary Error*

Plaintiff contends the court made several reversible evidentiary errors. We disagree.

First, in phase two of the trial, the court excluded exhibit 18, which is the lis pendens filed in connection with the set-aside judgment. Phase two concerned only whether Diehl maintained an equitable interest in the property. The lis pendens had no bearing on the intent of the parties to the 1987 and 1988 transfers and was properly excluded as irrelevant.

Next, exhibits 69, 80, 94, and 98 were various documents related to the title company report and escrow instructions pertaining to the Neals' purchase of the residence. Plaintiff offered them to show the Neals' escrow officer was on notice of the set-aside judgment. The trial court excluded them in phase two of the trial as irrelevant. We agree; whether the escrow agent was on notice of the set-aside judgment in 2009 is irrelevant to whether Diehl preserved an equitable interest in the residence in 1987 and 1988.

Exhibit 131 was a completely unrelated judgment that underlay the decision in *Reddy v. Gonzales* (1992) 8 Cal.App.4th 118. The judgment was offered to help the trial court interpret the published appellate decision. The court properly excluded it. The judgment itself is not binding, and the published appellate decision stands on its own. Further, plaintiff has not explained how excluding the judgment was harmful, and thus even if we found error we would not reverse.

Finally, plaintiff argues exhibit 104 was improperly admitted. Exhibit 104 was the Neals' receipt of a preliminary title report. It was offered by defendants in phase

_____

settled on that point. (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 649.) It does not follow, however, that every fraudulent conveyance judgment nullifies the transfers in question entirely. Assuming such a remedy is available at all, we would have to determine from the language of the judgment whether the court ordered such a remedy. As set forth above, the set-aside judgment did not.

11

two to show the Neals were unaware of any cloud on title to the residence. We agree with plaintiff it was irrelevant to whether Diehl maintained an equitable interest in the residence. Nonetheless, plaintiff has offered no explanation for how such an error impacted the court's holding in phase two. We see no indication the court relied on it at all. Accordingly, the error was harmless.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs incurred on appeal.

IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

12